**GREENSPOON MARDER LLP**
Kelly M. Purcaro, Esq.
Kory Ann Ferro, Esq.
One Gateway Center, Suite 2600
Newark, New Jersey 07102
Tel.: (732) 456-8734 or 8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

**LOWENSTEIN SANDLER LLP**
Jenifer Fiorica Delgado, Esq.
Markianna J. Julceus
One Lowenstein Drive
Roseland, New Jersey 07068
Tel.: (646) 414-6962 or (862) 926-2707
jdelgado@lowenstein.com
mjulceus@lowenstein.com
*Attorneys for Defendant AccuZIP, Inc.*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons,* EDWIN MALDONADO, PATRICK COLLIGAN, and PETER ANDREYEV,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>ACCUZIP, INC., RICHARD ROES 1-10, *fictitious names of unknown individuals and* ABC COMPANIES 1-10, *fictitious names of unknown entities,*<br><br>　　　　　　　Defendants. | Case No.: 1:24-cv-04383-HB<br><br>Civil Action<br><br>**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND DEMAND FOR JURY TRIAL** |

Defendant AccuZIP, Inc. ("AccuZIP"), by and through its undersigned counsel, hereby timely responds to the Complaint filed by Plaintiffs, Atlas Data Privacy Corporation, *as assignee of individuals who are Covered Persons*, Edwin Maldonado, Patrick Colligan, and Peter Andreyev ("Plaintiffs"). The headings and Paragraph numbers below correspond to the Paragraphs contained in the Complaint.

## **INTRODUCTION**

1.      AccuZIP denies that it is one of the alleged "uncooperative profit-seeking data brokers" as described in Paragraph 1 of the Complaint. AccuZIP is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 1 of the Complaint and accordingly denies the allegations.

2.      AccuZIP denies that it is one of the "companies brokering data" or that it "choos[es] profit and personal gain over a critical public interest and the unequivocal mandate of the law" or that operates "without sufficient regard for the risks and consequences imposed upon individuals who serve critical judicial and law enforcement roles" as described in Paragraph 2 of the Complaint.  AccuZIP is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 2 of the Complaint and accordingly denies the allegations.

3.    AccuZIP denies that it is a "data broker," that it "wantonly and repeatedly disregard[s] the law" or "demonstrate[s] a callousness towards the well-being of those who serve" as described in Paragraph 3 of the Complaint. AccuZIP is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 3 of the Complaint and accordingly denies the allegations.

4.    AccuZIP admits that Plaintiffs filed this action. AccuZIP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 of the Complaint and accordingly denies the allegations.

## BACKGROUND

### Passage of Daniel's Law in New Jersey

5.    AccuZIP admits the allegations contained Paragraph 5 of the Complaint.

6.    AccuZIP admits the allegations contained in Paragraph 6 of the Complaint.

7.    AccuZIP denies that it is like the data broker and denies it provides data broker services as described in Paragraph 7 of the Complaint and condemns the actions of the gunman.

**New Jersey Passes Daniel's Law in 2020**

8.      AccuZIP admits that Daniel's Law is codified in *N.J.S.A.* 47:1a-1, *et seq.* and *N.J.S.A.* 56:9-166.1 and such statute speaks for itself and is the best evidence of its contents.  AccuZIP the remaining allegations contained in Paragraph 8 of the Complaint to the extent they incorrectly state a conclusion of law.

9.      AccuZIP admits that Daniel's Law is codified in *N.J.S.A.* 47:1a-1, *et seq.* and *N.J.S.A.* 56:9-166.1 and such statute speaks for itself and is the best evidence of its contents.  AccuZIP denies the remaining allegations contained in Paragraph 9 of the Complaint to the extent they incorrectly state a conclusion of law.

**Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022**

10.      AccuZIP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 of the Complaint.

11.      AccuZIP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 of the Complaint.

12.      AccuZIP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of the Complaint.

**Violence Against Police Officers and Judges Has Not Stopped**

13.      AccuZIP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 of the Complaint.

14.    AccuZIP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint.

## THE PARTIES

### The Individual Plaintiffs

15.    AccuZIP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint and accordingly leaves Plaintiffs to their proofs.

16.    AccuZIP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of the Complaint and accordingly leaves Plaintiffs to their proofs.

17.    AccuZIP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the Complaint and accordingly leaves Plaintiffs to their proofs.

### Plaintiff Atlas and its Assignors

18.    AccuZIP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 of the Complaint and accordingly leaves Plaintiffs to their proofs.

19.    AccuZIP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 of the Complaint and accordingly denies the allegations.

20.    AccuZIP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the Complaint and accordingly denies the allegations.

21.    AccuZIP denies the allegations contained in Paragraph 21 of the Complaint and accordingly denies the allegations.

22.    AccuZIP denies the allegations contained in Paragraph 22 of the Complaint.

23.    AccuZIP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the Complaint and accordingly denies the allegations.

24.    AccuZIP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24 of the Complaint and accordingly denies the allegations.

25.    AccuZIP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25 of the Complaint and accordingly denies the allegations.

26.    AccuZIP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 of the Complaint and accordingly denies the allegations.

27.    AccuZIP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27 of the Complaint and accordingly denies the allegations.

28.    AccuZIP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28 of the Complaint and accordingly denies the allegations.

29.    AccuZIP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29 of the Complaint and accordingly denies the allegations.

**Defendants**

30.    AccuZIP denies the allegations contained in Paragraph 30 of the Complaint.

31.    AccuZIP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31 of the Complaint as it references unidentified "Richard Roe" individuals and "ABC Companies."  To the extent Paragraph 31 contends that employees of AccuZIP were engaged in any wrongdoing, AccuZIP denies same.

32.    AccuZIP provides software and services for postal presorting, data cleansing, and mail tracking for businesses.  AccuZIP helps companies validate addresses against the USPS database, correct errors, remove duplicate entries, and

standardize addresses to meet USPS requirements.  AccuZIP's software normalizes addresses and tracks all packages shipped through UPS.  AccuZIP does so, in part, through AccuZIP.com.   AccuZIP denies the remaining allegations contained in Paragraph 32 of the Complaint and accordingly leaves Plaintiffs to their proofs.

33.    AccuZIP denies the allegations contained in Paragraph 33 of the Complaint.

34.    AccuZIP denies that the characterizations of services alleged in Paragraph 34 of the Complaint apply to AccuZIP and further denies that AccuZIP "disclose[s]" information "without sufficient regard to the risks and consequences imposed on individuals." AccuZIP is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 34 of the Complaint and accordingly leaves Plaintiffs to their proofs.

## JURISDICTION AND VENUE

35.    Paragraph 35 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required. To the extent a response is required, AccuZIP denies that state court, where the Complaint was filed, had jurisdiction, which is why the matter was properly removed to federal court.

36.    Paragraph 36 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required. To the extent a response is required, AccuZIP denies the allegations in Paragraph 36 of the

Complaint as venue in Monmouth County was not proper resulting in the removal of this matter from state court to federal court.

## FACTS COMMON TO ALL COUNTS

37.     Paragraph 37 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, AccuZIP admits that Daniel's Law is codified in *N.J.S.A.* 47:1a-1, *et seq.* and *N.J.S.A.* 56:9-166.1.

38.     Paragraph 38 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, AccuZIP denies the allegations contained in Paragraph 38 of the Complaint to the extent they incorrectly state a conclusion of law.

39.     Paragraph 39 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, AccuZIP denies the allegations contained in Paragraph 39 of the Complaint to the extent they incorrectly state a conclusion of law.

40.     Paragraph 40 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, AccuZIP denies the allegations contained in Paragraph 40 of the Complaint to the extent they incorrectly state a conclusion of law.

41.    Paragraph 41 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required. To the extent a response is required, AccuZIP denies the allegations contained in Paragraph 41 of the Complaint to the extent they incorrectly state a conclusion of law.

42.    Paragraph 42 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required. To the extent a response is required, AccuZIP denies the allegations contained in Paragraph 42 of the Complaint to the extent they incorrectly state a conclusion of law.

43.    Paragraph 43 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, AccuZIP denies the allegations contained in Paragraph 43 of the Complaint to the extent they incorrectly state a conclusion of law.

44.    AccuZIP denies the allegations contained in Paragraph 44 of the Complaint.

45.    AccuZIP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 45 of the Complaint and accordingly denies the allegations.

46.    AccuZIP denies the allegations contained in Paragraph 46 of the Complaint.

47.    AccuZIP denies the allegations contained in Paragraph 47 of the Complaint.

48.    AccuZIP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 48 of the Complaint and accordingly denies the allegations.

49.    AccuZIP denies the allegations contained in Paragraph 49 of the Complaint.

## COUNT ONE
**(Daniel's Law)**

50.    AccuZIP repeats, realleges, and incorporates by reference each of the preceding paragraphs of this Answer as if fully set forth herein.

51.    AccuZIP denies the allegations contained in Paragraph 51 of the Complaint.

52.    Paragraph 52 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, AccuZIP denies the allegations contained in Paragraph 52 of the Complaint to the extent they incorrectly state a conclusion of law.

53.    AccuZIP denies the allegations contained in Paragraph 53 of the Complaint.

54.    AccuZIP denies the allegations contained in Paragraph 54 of the Complaint.

55.     AccuZIP denies the allegations contained in Paragraph 55 of the Complaint.

56.     AccuZIP denies the allegations contained in Paragraph 56 of the Complaint.

**WHEREFORE**, AccuZIP demands judgment against Plaintiffs dismissing their Complaint with prejudice, awarding AccuZIP attorneys' fees and costs and granting such other and further relief as the Court deems just and proper.

As to any part of the Complaint not specifically admitted, denied, or discussed with respect to AccuZIP, AccuZIP hereby denies said allegations, including, but not limited to, any allegations contained in the Complaint's preamble, headings, subheadings, and wherefore clauses.  Furthermore, any averments in the Complaint to which no responsive pleadings are capable or required shall be deemed denied.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof where it otherwise rests with Plaintiffs, AccuZIP pleads the following affirmative defenses to Plaintiffs' Complaint:

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, for failure to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the applicable Statute of Limitations.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Plaintiffs lack standing to bring this action as Plaintiffs have not suffered the requisite harm required to confer standing under Article III of the United States Constitution.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Plaintiffs' lack standing to bring the claims by way of assignment and/or as noncovered persons.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because any alleged wrongdoing by AccuZIP, which AccuZIP denies, was caused by mistake. Indeed, AccuZIP acted reasonably and in good faith at all material times based on all relevant facts and circumstances known by it at the time it acted.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine of estoppel.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine of waiver.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because the subject alleged speech constitute commercial speech protected by the First Amendment of the United States Constitution and the imposition of liability for such protected speech violates the First Amendment rights of the speaker.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine of unclean hands.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Plaintiffs failed to mitigate their damages. While AccuZIP does not concede that it has violated Daniel's Law or that Plaintiffs sustained damages, recovery (if any) should be reduced in proportion to Plaintiffs' failure to mitigate such damages.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Plaintiffs seek impermissible liquidated damages.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because the alleged requests were sent for an improper purpose, and in an effort to manufacture and pursue litigation on a massive group action basis, not to seek compensation for damages suffered, as contemplated by statute.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine of unjust enrichment.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because the alleged damages Plaintiffs seek were caused in whole or in part by the acts or omissions or intervening and superseding acts of negligence or intentional conduct on the part of persons or entities over whom AccuZIP has neither control nor right of control and for whose actions AccuZIP is not liable.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because the statutory damages provisions of the law are excessive fines and/or are grossly disproportionate to any actual harm that may have been suffered. Accordingly, such statutory damages provisions violate the United States Constitution.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the Communications Decency Act.  *See* 47 U.S.C. § 230 *et seq.*

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited as violative of the United States Constitution as applied to AccuZIP.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for injunctive relief fail or otherwise are barred, in whole or in part, or are limited because there is neither continuing harm nor immediate danger.

## NINETEENTH AFIRMATIVE DEFENSE

AccuZIP did not owe a duty to Plaintiffs.

## TWENTIETH AFFIRMATIVE DEFENSE

AccuZIP did not breach any legal duty owed to Plaintiffs.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

AccuZIP was not the actual or proximate cause of the damages claimed by Plaintiffs.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

The claims against AccuZIP are barred by the doctrines of comparative and/or contributory negligence.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Public policy prohibits recovery by Plaintiffs against AccuZIP.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' allegations are barred by the common law doctrine of impossibility of performance.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Atlas failed to provide full and complete information to their users regarding AccuZIP and its services during the opt-out and/or assignment process resulting in improper opt-out requests based on misinformation and incomplete information and/or invalid assignments.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims of punitive damages fail or otherwise are barred, in whole or in part, or are limited because AccuZIP did not engage in any acts or omissions actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions. In addition, the award of such damages would violate AccuZIP's rights under the Constitutions of the State of New Jersey and the United States of America.

## TWENTY-SEVENTY AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine

of laches.

## RESERVATION OF RIGHTS

AccuZIP reserves the right to amend or add to its affirmative defenses upon discovery of additional information or evidence or as justice so requires.

**WHEREFORE**, AccuZIP demands judgment against Plaintiffs dismissing their Complaint with prejudice, awarding AccuZIP attorneys' fees and costs and granting such other and further relief as the Court deems just and proper.

## COUNTERCLAIMS

Defendant/Counterclaimant AccuZIP, Inc. ("AccuZIP"), by and through its undersigned counsel, hereby complains by way of Counterclaim against Plaintiffs/Counterclaim-Defendants, Atlas Data Privacy Corporation, *as assignee of individuals who are Covered Persons*, Edwin Maldonado, Patrick Colligan, and Peter Andreyev ("Plaintiffs"), as follows:

## PARTIES

1.      Defendant/Counterclaimant AccuZIP is a Texas company engaged in providing software and services for postal presorting, data quality enhancement, and mail tracking for business customers. AccuZIP's solutions enable companies to validate addresses against the official USPS database, correct address errors, eliminate duplicate records, and standardize addresses in compliance with USPS

requirements. AccuZIP offers software tools for address normalization and mail tracking services.

2.      AccuZIP maintains its principal place of business at 2450 South Shore Boulevard, Suite 125, League City, Texas 77573. AccuZIP delivers its services through interstate computer-based systems and does not maintain any offices, facilities, or physical presence within the State of New Jersey. AccuZIP provides services via interstate computer services and does not have any offices or locations within the State of New Jersey.

3.      Upon information and belief, Plaintiff Atlas Data Privacy Corporation ("Atlas") is a Delaware corporation organized under the laws of the State of Delaware with its offices located at 201 Montgomery Street, Suite 263, Jersey City, New Jersey.

4.      Upon information and belief, Edwin Maldonado is or was a Detective with Plainfield, New Jersey's major crime unit and a Federal task force.

5.      Upon information and belief, Plaintiff Patrick Colligan is or was a police Detective for the police department of Franklin Township in Somerset, New Jersey.

6.      Upon information and belief, Plaintiff Peter Andreyev is or was a police officer for the police department of Point Pleasant in Ocean County, New Jersey.

## JURISDICTION AND VENUE

7.      Jurisdiction of this Court is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1), as AccuZIP is a citizen of a state different from Plaintiffs and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.      Venue is proper in this judicial district pursuant to the assignment of this case to this Court.

## FACTUAL BACKGROUND

9.      Atlas leveraged the amendments to Daniel's Law to improperly create a cottage industry for itself, whereby it designed a process upon which it could recruit "covered persons," sabotage hundreds of businesses, and profit off the legal claims of those very "covered persons" at the expense of unsuspecting companies.

10.     Atlas sought out and signed up thousands of alleged covered persons (the "Assignors"), asked that they assign their legal rights to Atlas, provided the Assignors with a preset list of target companies, and created "nondisclosure requests" on behalf of the Assignors.

11.     The "nondisclosure requests" created by Atlas were generic, autogenerated emails completely devoid of the individual information of the Assignors, which would be needed to, among other things, confirm that the tens of thousands of requests were *bona fide* requests, made on behalf of actual Covered Persons as defined by Daniel's Law, or even authorized by the Assignors, or if the

information provided was in fact "the home address or unpublished home telephone number" of any actual Covered Person (herein "Protected Information").

12.    Indeed, the requests were created and sent by Atlas, and not by the Assignors, as required by Daniel's Law.

13.    Atlas collected Assignors for about six months until it reached nearly 20,000 – all the while withholding such Assignors purported nondisclosure requests until Atlas acquired its critical mass needed to launch its attack.

14.    To be sure, if Atlas were truly concerned about the safety of the Assignors, it would have generated opt-out requests immediately upon an Assignor signing up for services, not months later.

15.    Atlas failed to verify that the Assignors qualified as Covered Persons under Daniel's Law.

16.    Atlas failed to verify that the targeted defendants, including AccuZIP, possessed or disclosed Protected Information of the Assignors.

17.    Atlas failed to advise the Assignors of AccuZIP's business, terms of use, privacy practices, or any other material facts about AccuZIP.

18.    By way of example, Atlas failed to advise or consider AccuZIP's business model and services, including but not limited to:

- AccuZIP provides innovative software and services that streamline postal processing, data quality, and mail tracking for businesses of all sizes. AccuZIP enables companies to validate and correct mailing addresses against the

official USPS database, standardize address formatting to meet USPS requirements, and eliminate duplicate or undeliverable records.

- In addition to comprehensive CASS-Certified™ address validation and NCOALink change-of-address processing, AccuZIP supports postal presorting for the most cost-effective postage discounts, as well as mail tracking through AccuTrace, giving customers real-time visibility into their mailpieces.

- AccuZIP software integrates seamlessly with USPS requirements and also provides tools for data cleansing, list management, and compliance automation. While primarily focused on USPS processing, AccuZIP also supports additional shipping and tracking integrations.

19.    Once Atlas reached its critical mass of Assignors, according to Plaintiffs' Complaint and Atlas' subsequent productions, Atlas sent tens of thousands of emails nearly simultaneously, all from "@atlasmail.com" to "support@AccuZIP.com" rather than use AccuZIP's already preexisting opt-out platform.

20.    AccuZIP had and has a preexisting opt-out process, whereby opt out requests can and could have been easily processed through the available platform on AccuZIP's website (https://www.accuzip.com/contact/contact-removal/) regardless of an individual's Covered Person status.  As such, in launching its attack, Atlas actively ignored a pre-established, user friendly opt-out platform that would have immediately removed the Assignors' data regardless of the verification of their status as a Covered Person under Daniel's Law.

21.    The Complaint[1] alleges that "each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas)" sent nondisclosure request via email to AccuZIP from "AtlasMail" starting on or about January 10, 2024. Complaint at ¶ 44.

22.    AccuZIP denies that the individually named Plaintiffs and all of the Assignors sent nondisclosure requests.

23.    AccuZIP denies that the requests were valid, denies that the assignments were valid, and denies that the Assignors all qualify as Covered Persons under Daniel's Law.

24.    When Atlas' attack started to bombard AccuZIP's system, AccuZIP immediately believed same to be spam.   The emails contained invalid, non-standardized, and non-normalized address data rendering the information unusable and impractical to process and match to internal name and address information.

25.    In an abundance of caution and in an effort to ensure compliance, AccuZIP reached out to Atlas immediately after detecting the first wave of opt-out requests, when its support inbox was suddenly flooded with thousands of automated redaction emails. The next day, AccuZIP's Senior Support Engineer sent a formal

---

[1] February 9, 2024, Plaintiffs filed the underlying complaint against AccuZip in the New Jersey State Court, Law Division, Monmouth County (State Dkt. MON-L-000554-24) (the "Complaint"). On March 29, 2024, AccuZip filed a Notice of Removal of Plaintiffs' Complaint before this Court (Dkt. No. 1), which removal was unopposed and thereafter granted by this Court.

email to Atlas requesting clarification and assistance. That same day, AccuZIP's CEO and President instructed the support team to follow up with Atlas until a resolution was reached. Later that evening, an individual from Atlas named Matt responded to AccuZIP's inquiry.

26.     The following day, AccuZIP's CEO personally contacted Matt by email and phone, proposing the creation of a secure data transfer process so that the protected information could be ingested and suppressed efficiently. Matt acknowledged the communication, provided his direct phone number, and scheduled a call with AccuZIP's CEO. During this exchange, Matt expressly told AccuZIP that AccuZIP was the <u>first</u> company to contact Atlas about the opt-out requests.

27.     AccuZIP advised Atlas that the data in the emails sent had to be standardized and normalized to be properly processed.  To that end, AccuZIP's internal team engaged with Matt at Atlas to establish a compliant suppression process for the batch data request.  Together, AccuZIP and Atlas worked through normalizing the data, implementing secure processes, and developing ongoing procedures to ensure compliance moving forward.

28.     AccuZIP advised Atlas Mail that the flood of Data Subject Request ("DSR") emails sent to its support inbox could not be processed in their raw form and required standardization and normalization. None of the emails, as transmitted, could be matched to AccuZIP's existing normalized datasets. Within days, tens of

thousands of messages had been received, overwhelming AccuZIP's systems and rendering individual, case-by-case handling impossible.

29.    AccuZIP immediately engaged with Atlas's representative, Matt, to establish a compliant suppression process. AccuZIP preserved the data by exporting emails into text format while requesting an alternative secure method of delivery. Atlas thereafter provided AccuZIP with portal access for batch downloads (through the Atlas DSRCompliance portal), and AccuZIP began development of automated secure suppression processes.[2]

30.    Shortly thereafter, AccuZIP had implemented encryption, automated ingestion, and matching logic to permanently suppress protected records across its systems. These measures ensured both immediate compliance with Daniel's Law and the capacity to manage future DSR updates on an ongoing basis.

---

[2] Atlas's representative it was working with AccuZIP to establish a solution for receiving suppression data through the Atlas DSRCompliance portal. This access provided login credentials and decryption passwords to download suppression files in batch format, intended to replace the flood of tens of thousands of individual emails that had overwhelmed AccuZIP's support inbox. In practice, the platform was unreliable from the outset. AccuZIP initially encountered repeated errors downloading files and problems receiving the necessary passwords. These failures were reported directly to Atlas; however, Atlas never replied. Significant problems persist. AccuZIP continues to encounter discrepancies and conflicting information between (1) the DSRCompliance.com website, (2) the downloaded CSV files, and (3) the email communications provided by Atlas. These inconsistencies undermine the reliability of Atlas's compliance system and further demonstrate that AccuZIP had to independently develop stable, automated suppression processes to ensure compliance with Daniel's Law.

31.    At every stage, AccuZIP acted promptly, in good faith, and with technical diligence to normalize the data, secure the process, and ensure perpetual compliance, notwithstanding Atlas's disruptive transmission practices.

32.    AccuZIP was proactive, transparent, and acted in good faith to not only act promptly in response to the initial voluminous, unwieldy, and improperly sent requests, but also collaborated directly with Atlas to create a solution going forward.[3]

33.    AccuZIP designed and implemented a secure, automated system for the ingestion, encryption, parsing, and suppression of all DSR records. AccuZIP completed this development, enabling full compliance with Daniel's Law through automated suppression logic, permanent removal of protected data, and seamless integration into its existing operational systems.

34.    Despite these good-faith efforts, and while active communications with Matt at Atlas were ongoing, Atlas nonetheless filed suit in against AccuZIP on February 9, 2024, without prior notice and while AccuZIP's compliance measures were being finalized.

---

[3] AccuZIP attempted in good faith to work with Atlas to make the system functional by: Advocating for Secure Access, Engineering Automated Compliance Systems, Proposed Partnership to Advance Industry Standards, ensuring that AccuZIP and other companies could achieve timely compliance despite the unprecedented influx of emails and records Atlas was generating. Atlas disregarded these efforts.

35.    As soon as was possible given Atlas' tactics that were clearly aimed at making compliance difficult if not impossible, AccuZIP fully complied with all requests and Atlas advised it had already filed suit nonetheless and in spite of AccuZIP working directly with Atlas on compliance procedures.

36.    Indeed, it is evident that a substantial volume of the deficient submissions in Atlas's requests were deliberately transmitted at the very beginning of the year—in early January of 2024—during a period when many businesses, including AccuZIP's, were not yet operating at full staffing levels following the holiday shutdown. The volume, timing, and nature of these submissions strongly evince an intentional attempt by Atlas to create a compliance failure by making timely processing impossible.

37.    As part of AccuZIP's working with Atlas, Atlas provided AccuZIP with access to its User Interface ("UI") that provide responses to Data Subject Requests ("DSRs").   AccuZIP's access to the UI was supposed to streamline and make compliance more easy, but has actually made compliance more difficult.[4]

---

[4] This platform was represented as a mechanism to streamline compliance and make it more efficient. It has done the opposite. Instead of reducing complexity, the UI has consistently produced confusion, conflicting information, and operational roadblocks that have made compliance far more difficult. AccuZIP continues to encounter serious discrepancies and contradictions between (1) the DSRCompliance.com website, (2) the CSV files downloaded from the system, and (3) the email communications sent by Atlas. These 3 sources of supposed "compliance data" rarely align, undermining the reliability of the Atlas system and creating uncertainty about which dataset is authoritative.

38.    Now, not only does Atlas continue to bombard AccuZIP with emails containing invalid, non-normalized, and non-standardized data, but Atlas also uploads data in response to DSRs, which are exported to CSV (comma-separated values) files.  However, the CSV files are riddled with errors such as, inconsistent, misleading and backdated submissions, and improperly formatted data, mismatches between the UI and exported CSVs, insertion of fabricated records, and frequent changes to data formatting.  The data provided by Atlas includes concatenated phone numbers without separators, missing delimiters in addresses, phantom records, and delayed or backdated DSR submissions.

39.    In sum, consistent with Atlas' initial spam attack, using Atlas's UI is meant to set up new and additional violations rather than facilitate compliance.

40.    Following Atlas' implementation of this litigation, in spite of AccuZIP's proactive, hands-on compliance efforts, on April 18, 2024 (Dkt. No. 12) and June 17, 2025 (Dkt. No. 58), the Court ordered Atlas to produce lists of the Assignors (herein a "List" or the "Lists").

41.    Based upon the Lists, it is abundantly clear that Atlas sent its spam attack of tens of thousands of nearly identical emails from the same unknown handle to AccuZIP with the purpose and intention of frustrating the 10-day compliance period under Daniel's Law.

42.    The Lists show that Atlas, indeed, sent multiple separate emails on

behalf of the same Assignors (e.g., one email for an address, one email for a phone number, one email for an alternate phone number) to generate an even higher volume of emails in its calculated cyber-attack against AccuZIP, in an effort to create multiple claims per Assignor and to further exacerbate the damage to AccuZIP's computer systems and business. In some instances, upwards of five separate email requests were generated by Atlas for a single Assignor.

43.    To be sure, as Ordered by this Court, Atlas provided a List of some 48,507 alleged non-disclosure requests emails.

44.    Then in response to a second Order of this Court, Atlas sent an additional List purporting to provide AccuZIP with "A 'Covered Persons list', which includes, for both individuals plaintiffs and the 'Covered Persons' (as defined in the Complaint), the dates the [alleged 48,499] takedown notices were [supposedly] delivered to defendants and the 'category' of covered person into which each person fits."

45.    Per the Lists, it appears that some 48,507 – 48,499 separate emails were sent – allegedly on behalf of about 19,000 Assignors. Many of these alleged requests are duplicates, list different addresses and different phone numbers for the same Assignor, and otherwise appear to have separate requests for information for the same Assignor.

46.    The Lists allege that Atlas sent these approximately 48,000 emails to AccuZIP in a calculated, nearly simultaneous, and massive fashion following the 2024 New Years Holiday, *i.e.*, about 7,000 emails per day continuously in early January of 2024.

47.    Atlas created and designed this computer-based attack upon AccuZIP, flooding AccuZIP system and servers with tens of thousands of emails, in an attempt to manufacture claims for the Assignors, and profit for Atlas.

48.    Atlas purposefully made the Lists unmanageable and difficult to work with as, for example, they were not searchable nor editable, listed numerous line items for each Assignor, and could not be easily imported into a compliance platform.  Same were sent to further frustrate compliance efforts.

49.    AccuZIP had to devote substantial time and resources, which are very limited given the size and nature of AccuZIP's business, to processing the takedown requests, build a system to process the requests, and engage in manual, time consuming reconciliation processes across emails, portal records, and exported files to ensure Atlas has not and cannot trap AccuZIP.  As a result, AccuZIP's employees were and continue to be diverted resulting in their inability to provide services to legitimate clients and business inquiries.[5]

---

[5] Because of Atlas's "solution" failures, AccuZIP was forced to build its own secure, automated suppression infrastructure, independent of Atlas's unstable platform to ensure compliance with Daniel's Law. AccuZIP had to create parallel systems, at its

50.    Atlas could have, and should have, utilized AccuZIP's pre-existing opt-out platform, which would have automatically processed all takedown requests immediately.  Instead, Atlas chose to utilize a targeted spam attack, feigned cooperation, and provision of a UI that appears aimed at manufacturing violations thus making clear Atlas' intent to prevent compliance in an effort to create claims.

51.    AccuZIP's computer-based technology, and its computers/systems, are used in interstate and foreign commerce and/or communications.

52.    Atlas's unauthorized access to AccuZIP's computer systems and data was accomplished by improper means and a plan with at least one other unknown actor to fraudulently, purposefully, and knowingly harm AccuZIP.

53.    AccuZIP did not consent to or otherwise have knowledge of Atlas's unauthorized access.

54.    Atlas's unauthorized access to AccuZIP's computer systems and data interfered with AccuZIP's business and caused harm to AccuZIP by, for example, business interruption, interruption of services, diverted resources, and other harm.

55.    As a direct result of Atlas's actions, AccuZIP suffered harm including, but not limited to, its computer systems, its email system, its business, and other

---

own expense and under immense time pressure, demonstrating both the unreliability of Atlas's compliance tools and AccuZIP's unwavering good-faith commitment to meet its legal obligations.

damages related to same, including depletion of substantial time and already limited resources. For example, to manage Atlas's flawed and disruptive DSR processes, AccuZIP had to: Process tens of thousands of takedown requests delivered through email floods that disrupted normal operations; Engineer and implement a secure, automated system capable of normalizing, parsing, and suppressing records despite Atlas's ongoing delivery of invalid, inconsistent, and non-standardized data; Engage in manual, time-consuming reconciliation across 3 conflicting Atlas sources which were repeatedly riddled with formatting errors, phantom entries, and mismatches.

56.     Extraordinary measures were necessary to ensure that AccuZIP remained compliant with Daniel's Law and that Atlas could not later claim noncompliance despite providing unreliable data. The burden fell on AccuZIP's limited staff, who were pulled away from serving legitimate clients and business inquiries in order to remediate Atlas's failures. This diversion of skilled personnel, combined with the constant need to adapt to Atlas's shifting formats and fabricated records, has imposed a significant operational and financial strain on AccuZIP, which damages are estimated to exceed $600,000 or more.

## COUNT I
### Violations of New Jersey Computer Related Offenses Act
*N.J.S.A.* § 2A:38A-3 ("NJCROA")

57.     AccuZIP repeats and realleges Paragraphs 1-56 of its Counterclaims as if fully set forth herein.

58.    Atlas purposely and/or knowingly accessed AccuZIP's computer, computer system, or network without authorization or in excess of authorization as detailed above, *e.g.*, by way of the massive email spam attack and/or by way of unauthorized access through improper means.

59.    Atlas purposely and/or knowingly accessed, altered, damaged, took and/or destroyed AccuZIP data and/or systems without authorization.

60.    AccuZIP was damaged in business and/or property as a result of the unauthorized access and related misconduct of Atlas, including but not limited to, business interruption, interruption of services, diverted resources, operational disruption from Atlas's email blasts which overwhelmed AccuZIP's support system and prevented timely access to legitimate customer inquiries, the surge of messages risked crashing AccuZIP's mail servers and exhausting storage capacity, raising the possibility of lost or delayed client communications, and other forced emergency response measures necessitated by Atlas' actions.

61.    The email flood from Atlas functionally interfered with AccuZIP's systems, impaired its ability to service clients, caused substantial diversion of resources, and forced the company to shoulder the cost of emergency engineering and manual reconciliation. These harms were material, prolonged, and a direct result of Atlas's actions.

62.     Atlas acted purposefully and/or knowingly in their unauthorized actions.

63.     As a result, AccuZIP is entitled to and demands civil remedies for Plaintiffs' violations of the NJCROA, including, but not limited to, injunctive relief, compensatory damages, statutory damages, punitive damages, attorney's fees and costs, pre and post judgment interest, and all other relief as the Court deems proper and just.

## COUNT II
### Violations of Federal Computer Fraud and Abuse Act
### (CFAA) 18 *U.S.C.A.* § 1030

64.     AccuZIP repeats and realleges Paragraphs 1-63 of its Counterclaims as if fully set forth herein.

65.     AccuZIP website, platform, and database are protected computer(s) used in or affecting interstate or foreign commerce or communication pursuant to 18 U.S.C. §1030(e)(2)(B).

66.     Atlas's conduct constituted intentional unauthorized access and/or exceeding of authorized access of a computer in violation of the CFAA because, among other things Atlas's spam attacked AccuZIP's website, server, and/or database with tens of thousands of emails nearly simultaneously.

67.    Atlas's conduct constituted intentional unauthorized access and/or exceeding of authorized access of a computer in violation of the CFAA, as detailed above.

68.    Atlas acted knowingly and with intent to defraud by purposefully accessing a protected computer without authorization and with intent to defraud, and by accessing a protected computer without authorization or in excess of falsely obtained authorization and using such access to obtain or alter information that Atlas are not entitled to obtain or alter.

69.    Atlas's unauthorized and/or improper exceeding of falsely obtained authorized access to AccuZIP computer caused harm and interruption to AccuZIP's business and otherwise caused damage by the impairment to the integrity or availability of data, a program, a system, or information, costs incurred by AccuZIP in responding to the offense and/or restoring the system.

70.    Atlas's actions caused damages and loss suffered by AccuZIP which, in aggregate, far exceed $5,000 in value during a one-year period.

71.    As a result, AccuZIP is entitled to and demands civil remedies for Atlas's violations of the CFFA, including, but not limited to, injunctive relief, compensatory damages, statutory damages, punitive damages, attorney's fees and costs, pre- and post-judgment interest, and all other relief as the Court deems proper and just.

## COUNT III
**Tortious Interference**

72.    AccuZIP repeats and realleges Paragraphs 1-71 of its Counterclaims as if fully set forth herein.

73.    AccuZIP has a reasonable expectation of economic advantage and valid, protectable interest in protecting its economic relationship with its current customers and prospective customers.

74.    AccuZIP has business and contractual relationships with its customers.

75.    Atlas knew of AccuZIP's economic relationships and reasonable expectation of economic advantage with its customers and prospective customers.

76.    Atlas purposely, intentionally, and maliciously interfered with AccuZIP's economic relationships and reasonable expectation of economic advantage with its customers and prospective customers, without justification, by way of the massive, coordinated spam attack of tens of thousands of emails to AccuZIP, its feigned collaboration efforts and subsequently provided access to faulty systems, provision of multiple sources of inconsistent and massive data designed to frustrate compliance, and/or by way of unauthorized access through improper means and additional actions by Atlas as described above.

77.    Altas's actions in this regard inhibited AccuZIP's ability to service their customers and potential customers, caused massive disruption to services, and among other things, caused AccuZIP significant business interruptions and losses.

78.    As a result of Atlas's actions and interference, AccuZIP has suffered and continues to suffer losses and damages, the full amount of which shall be proven at trial.

79.    As a result, AccuZIP is entitled to and demands civil remedies for Atlas's Tortious Interference with current and perspective business advantage, including, but not limited to, injunctive relief, compensatory damages, punitive damages, attorney's fees and costs, pre and post judgment interest, and all other relief as the Court deems proper and just.

## **Prayer for Relief**

Wherefore, AccuZIP prays for relief to the extent and as permitted by law, as follows:

A.    For judgment against Atlas, and in favor of AccuZIP, on AccuZIP's Counterclaims I - III;

B.    Statutory damages;

C.    Injunctive relief;

D.    Compensatory damages;

E.    Actual damages;

F.    Punitive Damages;

G.    Attorney's fees and costs;

H.    Pre- and Post-Judgement interest; and

I.    Such other relief as the Court deems proper and just.

## DEMAND FOR JURY TRIAL

AccuZIP hereby demands a trial by jury on all issues as provided by *Fed. R. Civ. P.* 38(b) and *L. Civ. R.* 38.1.


DATED: October 3, 2025                    Respectfully submitted,

                                          **GREENSPOON MARDER LLP**
                                          *Attorneys for Defendant*
                                          *AccuZIP, Inc.*


                                          */s/ Kelly M. Purcaro*
                                          Kelly M. Purcaro, Esq.


## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2025, I filed a true and correct copy of the foregoing with the court and a copy will be served upon all parties of record via CM/ECF.


                                          */s/ Kelly M. Purcaro*
                                          Kelly M. Purcaro, Esq