# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br> v. <br><br> ACCUZIP, INC., et al., <br><br> Defendants. | Civ. Action No. 24-04383-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br> v. <br><br> JOY ROCKWELL ENTERPRISES, INC., et al., <br><br> Defendants. | Civ. Action No. 24-04389-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br> v. <br><br> THE ALESCO GROUP, L.L.C. <br><br> Defendants. | Civ. Action No. 24-05656-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br> v. <br><br> SEARCHBUG, INC. <br><br> Defendants. | Civ. Action No. 24-05658-HB |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br> v. <br><br> US DATA CORPORATION, et al., <br><br> Defendants. | Civ. Action No. 24-07324-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br> v. <br><br> DARKOWL, et al., <br><br> Defendants. | Civ. Action No. 24-10600-HB |

---

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR OMNIBUS MOTION TO DISMISS COUNTERCLAIMS PURSUANT TO RULE 12(b)(6)

---

**PEM LAW LLP**
Rajiv D. Parikh
Kathleen Barnett Einhorn
Jessica A. Merejo
One Boland Drive, Suite 101
West Orange, New Jersey 07052
Telephone (973) 577-5500
Emails: rparikh@pemlawfirm.com
      keinhorn@pemlawfirm.com
      jmerejo@pemlawfirm.com

**BIRD MARELLA RHOW
LINCENBERG DROOKS NESSIM LLP**
Ekwan E. Rhow (admitted *pro hac vice*)
Elliot C. Harvey Schatmeier (admitted *pro hac vice*)
Shoshana E. Bannett (admitted *pro hac vice*)
Gregory T. Nolan (admitted *pro hac vice*)
Bill L. Clawges (admitted *pro hac vice*)
1875 Century Park East, 23rd Fl
Los Angeles, California 90067
Telephone: (310) 201-2100
Email: erhow@birdmarella.com
      ehs@birdmarella.com
      sbannett@birdmarella.com
      gnolan@birdmarella.com
      bclawges@birdmarella.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT ........................................................................................... 4

I.    Counterclaim Plaintiffs fail to allege a CROA claim Under Both Their "Hacking" and "Nondisclosure Request Emails" Theories ................................. 4

A.    Hacking Theory: Counterclaim Plaintiffs Fail To Plausibly Allege Hacking or Fraudulent Use of Customer Login Credentials ..................... 4

1.    *DarkOwl's Allegations Regarding Unauthorized Access Do Not Satisfy Iqbal/Twombly Pleading Standards* ............................. 5

2.    *DarkOwl cannot show any damage to its business or property from Atlas allegedly accessing and obtaining a screenshot of its data.* ...................................................... 8

B.    Nondisclosure Request Email Theory: Counterclaim Plaintiffs Do Not State A CROA Claim Based On The Theory That Plaintiffs Sent A Large Volume of Nondisclosure Request Emails. ......................... 9

1.    *Counterclaim Plaintiffs do not plausibly allege that sending nondisclosure requests caused damages* ........................................ 10

i.    Counterclaim Plaintiffs rely on categories of damages that are not in the Counterclaims. .......................................... 11

ii.   DarkOwl's "business damages" were not caused by Plaintiffs. ................................................................. 13

iii.  Counterclaim Plaintiffs do not address Atlas's argument that their damages are conclusory ....................... 14

2.    *Counterclaimants do not adequately allege that any Atlas actions with respect to delivery of nondislosure request emails were knowing or unauthorized.* ............................................ 20

II.   Counterclaim Plaintiffs Fail to State a Claim Under the Computer Frauds and Abuse Act ................................................................................ 22

III.  Counterclaim Plaintiffs Fail to Plead Tortious Interference ................................. 23

A.    Counterclaim Plaintiffs failed to allege the loss of a specific customer. ...................................................................................... 24

i

B.  Counterclaim Plaintiffs fail to address the lack of allegations concerning Atlas's awareness of a business relationship .......................... 26

C.  Counterclaim Plaintiffs do not allege that they would have received the anticipated economic benefit, but for the interference ....................... 27

IV.  Counterclaim Plaintiffs Fail To Allege Any Fraud Committed By Atlas ........... 29

A.  DarkOwl's Fraud Claims Based On Alleged Misrepresentations About DarkOwl Fail. .................................................................. 30

B.  Counterclaim Plaintiffs have not adequately pled fraud based on representations that assignors are covered persons. .................................. 32

    1.  DarkOwl's conclusory allegations do not satisfy 9(b). ................. 32

    2.  DarkOwl does not adequately allege scienter ................................ 34

    3.  DarkOwl does not adequately allege reliance and causation ........ 35

C.  Counterclaim Plaintiffs Do Not Adequately Plead Fraud Based on Access to DarkOwl's Platform .................................................... 37

V.  Counterclaim Plaintiffs Fail to Allege Atlas Conspired With Anyone ............. 39

VI.  The Counterclaim Plaintiffs' allegations ignore the Individual Plaintiffs, so the claims against them must be dismissed ...................................................... 41

CONCLUSION ........................................................................................... 42

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Am. Millennium Ins. Co. v. First Keystone Risk Retention Grp., Inc.*,
  332 F. App'x 787 (3d Cir. 2009) .......................................................................24

*Am. Online, Inc. v. Nat'l Health Care Disc., Inc.*,
  121 F. Supp. 2d 1255 (N.D. Iowa 2000) ...........................................................19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................5, 14, 18

*B&M Auto Salvage & Towing, LLC v. Twp. of Fairfield*,
  C.A. No. 11–2107, 2013 WL 5434717 (D.N.J. Sept. 27, 2013) .................28, 29

*Bramshill Invs., LLC v. Pullen*,
  No. CV 19-18288, 2020 WL 4581827 (D.N.J. Aug. 10, 2020) ...................15, 16

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir.1997) .............................................................................12

*United States v. Carlson*,
  209 F. App'x 181 (3d Cir. 2006) .......................................................................19

*Caspersen as Trustee for Samuel M.W. Caspersen Dynasty Trust v. Oring*,
  441 F. Supp. 3d 23 (D.N.J. 2020).......................................................................32

*CC Ford Grp. W., LLC v. Johnson*,
  C.A. No. CV 22-4143 (MAS)(TJB), 2025 WL 181206 (D.N.J. June 30,
  2025) ..................................................................................................................19

*CMC Food, Inc. v. Mitlitsky Eggs, LLC*,
  C.V. 18-8939, 2019 WL 5206104 (D.N.J. Oct. 16, 2019) ................................26

*CrossCountry Mortg., Inc. v. Am. Neighborhood Mortg. Acceptance Co.,*
  *LLC*,
  No. CV221119SDWLDW, 2023 WL 2158930 (D.N.J. Feb. 22, 2023) ...........41

*Crozier v. Johnson & Johnson Consumer Companies, Inc.*,
  901 F. Supp. 2d 494 (D.N.J. 2012).....................................................................18

*Doe v. Princton Univ.*,
  30 F. 4th 335 (3d Cir. 2022) ...............................................................5

*Dreibelbis v. Scholton*,
  274 F. App'x 183 (3d Cir. 2008)........................................................37

*United States v. Drew*,
  27 F. App'x 164 (4th Cir. 2001) ........................................................20

*Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*,
  516 F. Supp. 3d 407 (D.N.J. 2021)....................................................24

*Fidlar Techs. v. LPS Real Est. Data Sols., Inc.*,
  810 F.3d 1075 (7th Cir. 2016) ...........................................................20

*Fora Fin. Holdings, LLC v. Dream Data Servs., LLC.*,
  No. CV2300780GCJDB, 2023 WL 6049835 (D.N.J. Sept. 13, 2023)..............26

*Heartland Payment Sys., LLC v. Carr*,
  2021 WL 302918 (D.N.J. Jan. 29, 2021)............................................26

*Intervet, Inc. v. Mileutis*,
  Civ. No. 15-1371, 2016 WL 740267 (D.N.J. Feb. 24, 2016)............................26

*Magic Reimbursements LLC v. T-Mobile USA, Inc.*,
  Civ. No. CV22-02121GCTJB, 2023 WL 4866930 (D.N.J. July 31,
  2023) ..........................................................................................25

*MedWell, LLC v. Cigna Corp.*,
  Civ. No. 20-10627, 2023 WL 4045089 (D.N.J. June 16, 2023)........................25

*U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*,
  812 F.3d 294 (3d Cir. 2016) ..............................................................33

*Mortellite v. Novartis Crop Prot., Inc.*,
  460 F.3d 483 (3d Cir. 2006) ........................................................31, 32

*In re Myford Touch Consumer Litig.*,
  No. 13-CV-03072-EMC, 2016 WL 7734558 (N.D. Cal. Sept. 14,
  2016) ("New Jersey presumes neither reliance or causation")........................36

*Nayak v. CGA L. Firm*,
  No. 1:13-CV-2533, 2014 WL 70085 (M.D. Pa. Jan. 9, 2014) .........................12

*New Jersey Physicians United Reciprocal Exch. v. Boynton & Boynton, Inc.*,
    141 F. Supp. 3d 298 (D.N.J. 2015) .......................................................24

*In re Nickelodeon Consumer Priv. Litig.*,
    827 F.3d 262 (3d Cir. 2016) ...............................................................22

*Novartis Pharms. Corp. v. Bausch & Lomb, Inc.*,
    Civ. No. 07-5945, 2008 WL 4911868 (D.N.J. Nov. 13, 2008) .........................25

*Ocean City Exp. Co. v. Atlas Van Lines, Inc.*,
    No. CIV. 13-1467, 2013 WL 3873235 (D.N.J. July 25, 2013) .........................18

*Pulte Homes Inc. v. Laborers' Int'l Union of N. Am.*,
    648 F.3d 295 (6th Cir. 2011) ........................................................19, 20

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
    311 F.3d 198 (3d Cir. 2002) ...............................................................33

*Rodgers Grp. LLC v. Lewis*,
    2022 WL 4095785 (D.N.J. Sept. 7, 2022) ...........................................7, 14

*Shaikh v. Dept. of Banking & Ins. Div. of Ins.*,
    Civ. No. 19-14092, 2024 WL 5118429 (D.N.J. Dec. 16, 2024) .......................24

*Slim CD, Inc. v. Heartland Payment Sys., Inc*,
    No. CIV. A. 06-2256, 2007 WL 2459349 (D.N.J. Aug. 24, 2007) ....................26

*Tiger Supplies Inc. v. MAV Assocs. LLC*,
    Civ. No. 20-15566, 2022 WL 1830796 (D.N.J. June 3, 2022).........................25

*Woodend v. Lenape Reg'l High Sch. Dist.*,
    535 Fed. App'x 164 (3d Cir. 2013) ..................................................27, 28

**State Cases**

*Banco Popular v. Gandi*,
    184 N.J. 161 (2005) .......................................................................36

*Lamorte Burns & Co. v. Walters*,
    167 N.J. 285 (2001) .......................................................................25

*Nostrame v. Santiago*,
    213 N.J. 126-27 (2013) ...................................................................18

*Matter of Skevin*,
    104 N.J. 476 (1986) .......................................................................34

*Varacallo v. Massachusetts Mut. Life Ins. Co.*,
    332 N.J. Super. 31 (App. Div. 2000) ...............................................36

*Walid v. Yolanda for Irene Couture, Inc.*,
    425 N.J. Super. 171 (App. Div. 2012) .............................................32

*Weil v. Express Container Corp.*,
    360 N.J. Super. 599 (App. Div. 2003) .............................................36

**Federal Statutes**

Computer Frauds and Abuse Act ............................................................3

**State Statutes**

N.J.S.A. § 2A:38A-3 ........................................................................9, 10

N.J.S.A. § 2A:38A-3(a) ..........................................................................7

N.J.S.A § 2A:38A-3(b) ..........................................................................11

N.J.S.A. § 56:8-166.1 .............................................................................34

New Jersey's Computer Related Offenses Act ......................................4

## PRELIMINARY STATEMENT

The factual underpinnings of each of the counterclaims are identical. Each of the Counterclaim Plaintiffs unlawfully refused to honor the nondisclosure requests of approximately 19,000 Covered Persons under Daniel's Law, putting the safety of those individuals and their families at risk. After Atlas and Individual Plaintiffs sued them over these violations and their multiple attempts to avoid liability through motion practice failed, Counterclaim Plaintiffs manufactured meritless counterclaims based solely on the innocuous facts that (1) these thousands of Covered Persons unsurprisingly sent thousands of nondisclosure requests; and (2) the complaint contained a screenshot from Counterclaim Plaintiffs' commercial products, i.e., *direct evidence* that they continued to disclose Protected Information in violation of the law. Counterclaim Plaintiffs' scattershot Opposition Briefs only serve to confirm that they cannot state a claim for any of the causes of action alleged. The Opposition Briefs mischaracterize federal pleading standards, improperly rely on legal and factual allegations outside their Counterclaims, promote factually inapt state-law cases decided under more lenient pleading standards, and continue to pursue theories of liability and damages without sufficient factual predicate.

Counterclaim Plaintiffs effectively concede that they cannot demonstrate any "unauthorized" actions, as required for their Computer Related Offenses Act (CROA) and/or the Computer Fraud and Abuse Act (CFAA) claims, by disclaiming any

obligation to do so. Instead, they contend that they can make a showing of "reckless" conduct under a different statutory subpart. This last-ditch effort must be rejected because none of the Counterclaim Plaintiffs pled a CROA violation based on "reckless" actions (and they cannot prove reckless conduct in any event). They also continue to improperly rely on damage allegations so vague that it is impossible to determine which alleged damage corresponds to which theory of liability, or whether the purported harm stems merely from receiving and responding to Daniel's Law requests, which they are legally required to do.

The tortious interference claims fail because Counterclaim Plaintiffs neither identify nor can identify a single lost actual or prospective customer or contract, much less plead facts showing that Atlas knowingly and intentionally interfered with any such relationship. Counterclaim Plaintiffs fail to confront the extensive Third Circuit and reported and unreported District Court case law that requires such showings and simply disclaims any such responsibility. Indeed, Counterclaim Plaintiffs cannot meet even this easy standard because many of them voluntarily decided to leave the New Jersey market after they were sued, and any lost customers actually stem from those choices.

Counterclaim Plaintiffs' pursuit of bizarre fraud theories, such as their theory that Atlas defrauded them by making false statements about them to other people, merely reinforce that these claims were not brought in good faith. Their claim that Atlas misrepresented that assignors were Covered Persons is potentially sanctionable,

particularly without any description of falsity. Counterclaim Plaintiffs fail to allege and refuse to state even in opposition how many assignors are not Covered Persons, which assignors are not Covered Persons, or what the basis is for stating that assignors are not Covered Persons, even though Atlas has provided them with *extensive* spreadsheets with assignors' information (including each individual's basis for being a Covered Person, e.g., being a judge, a law-enforcement officer, etc.), and even though Atlas has proven assignors' status as Covered Persons to the satisfaction of other New Jersey courts.

Finally, Counterclaim Plaintiffs' affirmative factual allegations about Atlas foreclose any inference that Atlas worked with anyone else in connection with the alleged acts in the Counterclaims, dooming their "conspiracy" cause of action.

Accordingly and as set forth below, each of the Counterclaim Plaintiffs' counterclaims are wholly deficient and should be dismissed without leave to amend.[1]

---

[1] Because Counterclaim Plaintiffs are represented by the same counsel and because of the significant overlap in Counterclaim Plaintiffs' arguments in support of their counterclaims, as with the Motion, this reply brief focuses on DarkOwl's counterclaims to avoid repetition, and it generally cites similar allegations in other counterclaims and other arguments in footnotes and addresses distinction among the cases and arguments as needed. The sole exception to this practice is that there is a short section on the CFAA cause of action even though DarkOwl did not plead such a cause of action.

## ARGUMENT

**I.    Counterclaim Plaintiffs fail to allege a CROA claim Under Both Their "Hacking" and "Nondisclosure Request Emails" Theories**

The Counterclaim Plaintiffs allege two theories for recovery under New Jersey's Computer Related Offenses Act: (1) Atlas either "hacked" into its system and stole data or fraudulently used a customer's login credentials to access and take data; and (2) Atlas damaged DarkOwl's systems when it delivered, via email, the written nondisclosure requests in this case. As discussed below, DarkOwl tacitly acknowledges that it fails to state a claim for CROA violation under either theory because it largely runs from its own allegations, and relies instead on new legal and factual theories that appear nowhere in its Counterclaims.

### A. Hacking Theory: Counterclaim Plaintiffs Fail To Plausibly Allege Hacking or Fraudulent Use of Customer Login Credentials

DarkOwl's first factual theory is based on its claim that the "only" way that Atlas could have obtained a screenshot from DarkOwl's system is by "hacking" Dark Owl's system *or* fraudulently accessing its system through one or more of DarkOwl's customers. See Mot. at 13; Opp at 6; 11–12.[2] The factual allegations supporting this legal theory cannot sustain a CROA claim.

---

[2] Most Counterclaim Plaintiffs make a similar argument. Alesco Opp. at 22-23; PCM Opp. at 22; Searchbug Opp at 10-11; US Data Opp. at 20. Accuzip does not present a theory of CROA violation based on hacking or improperly using credential to access a computer system and obtain data. *See* AccuZIP Opp. at 20–25.

### 1.    *DarkOwl's Allegations Regarding Unauthorized Access Do Not Satisfy Iqbal/Twombly Pleading Standards*

DarkOwl offers no meaningful response to Plaintiffs' argument that DarkOwl's allegations are implausible under *Iqbal/Twombly*, given the legitimate means by which Atlas could have obtained the screenshot, including through an agent who lawfully passed DarkOwl's vetting process and accessed its system as a customer. Mot. at 13-14.[3] DarkOwl briefly suggests that lawful alternatives are "irrelevant" because "competing inferences cannot defeat plausibility." Opp. at 14-15. DarkOwl relies on *Doe v. Princton Univ.*, 30 F. 4th 335, 344 (3d Cir. 2022), but that case involved a single factual theory asserted by plaintiff supported by sufficient factual allegations and a single alternative suggested by defendant. Here, by contrast, DarkOwl does not claim to know how Atlas obtained the screenshot. It offers multiple factual theories—hacking *or* fraudulent misappropriation of another customer's credentials. Where the *plaintiff* offers multiple alternate factual theories of wrongdoing, and the defendant offers a lawful alternative, the plaintiff's speculative competing theories cannot be said to cross the line from "possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).[4]

---

[3] *See also* Alesco Opp. at 22-23; PCM Opp. at 22; Searchbug Opp. at 10-11; US Data Opp. at 20.

[4] DarkOwl's only other case – Connelly v. Lane Constr. Corp., 809 F.3d. 780, 789 (3d Cir. 2016) is wholly inapt. It merely addresses whether a plaintiff must "establish a *prima facie* case in order to survive a motion to dismiss."

Rather than confront this fatal flaw head on, DarkOwl attempts to distract with a strawman, insisting that "Atlas demands DarkOwl provide the exact credentials or endpoints Atlas used to gain unauthorized access to, and take data from, DarkOwl's platform." Opp. at 12.[5] But DarkOwl's argument is disingenuous. Atlas has never argued that DarkOwl was required to plead specific "credentials" or "endpoints". Rather, Atlas argued that binding Supreme Court case law demands that DarkOwl pleads more than the "sheer possibility that a defendant has acted unlawfully." *Id.* at 662, 678. And when something is "more likely explained by" legal conduct, factual allegations must be pled to establish why this legal conduct is not what actually occurred. *Id.* at 678. DarkOwl does not and cannot point to any such factual allegations here. For example, DarkOwl did not plead that its systems were actually hacked in the relevant time period.

DarkOwl next tries to suggest, without any citations to its counterclaims, that Atlas violated its Terms of Service. Opp. at 13. But, as argued in the Motion, DarkOwl did not plead what specific terms of service were violated and how, let alone which customer signed up, which customer signed the terms of service, which customer

---

[5] DarkOwl likens Atlas's position "to requiring a home invasion victim to detail exactly what tools the thief used to access the house and steal valuable property in advance of charging the thief found inside." Opp. at 12. This analogy merely proves Atlas' point. While it may be unfair to ask a plaintiff to plead the tools that a thief used, the plaintiff would need to allege that his home was actually invaded, not just that he did not know the "thief" and the thief had possession of an item belonging to plaintiff. Someone in possession of property could have been given it by another member of the household or could have bought it at a yard sale.

violated the terms of service, or Atlas's knowledge of the terms of service. Mot. at 14, n. 24.[6] Even now, DarkOwl does not argue that its terms of service prevent one of its customers from obtaining and knowingly providing the screenshot to Atlas. See Opp. at 13.

Indeed, it is so clear that DarkOwl did not plausibly allege that Atlas accessed and obtained its data without authorization that DarkOwl tries to disclaim any need to allege lack of authorization. *First*, DarkOwl argues that authorization is an affirmative defense. Opp. at 13 n. 8. Not so. Under the CROA, a plaintiff must prove that an action was done without authorization as an element of its claims. See e.g., N.J.S.A. § 2A:38A-3(a); (c) (prohibiting various "unauthorized" actions).[7] *Second*, DarkOwl argues that they do not need to prove lack of authorization because the CROA also prohibits recklessly accessing and obtaining data. Opp. at 14 (citing N.J.S.A. § 2A:38A-3(e)). But DarkOwl did not plead a CROA violation based on reckless conduct. The word "reckless" appears

---

[6] Indeed, the only reference to DarkOwl's terms of service in the Counterclaims is its conclusory claims that "Atlas's unauthorized access to DarkOwl's computer and subsequent improper use of DarkOwl's data violated DarkOwl's Terms and Conditions. Counterclaims, ¶ 53. The other Counterclaim Plaintiffs also fail to identify specific terms. Alesco Opp. at 22–23; PCM Opp. at 22; Searchbug at 11; US Data at 6.

[7] In a single sentence argument, DarkOwl contends that authorization is a fact-intensive inquiry, not suitable for resolution at motion to dismiss. Opp. at 13. In the only case DarkOwl relies on, authorization depended on the defendant's intent, and there were sufficient factual allegations to allow the complaint to move forwards. *Rodgers Grp. LLC v. Lewis,* 2022 WL 4095785, at *4, 8 (D.N.J. Sept. 7, 2022). Here by contrast, as discussed above, the factual allegations do not meet the standard required by *Iqbal/Twombly*.

nowhere in DarkOwl's counterclaims. Each of DarkOwl's allegations in Count 1 (the CROA count) refers solely to "unauthorized" actions.[8] See *Counterclaims*, ¶¶ 49, 50, 51, 52, 53.[9] DarkOwl cannot rely on an unpled legal theory. And the lack of plausible allegations of unauthorized conduct, DarkOwl's *only* pled legal theory of relief, requires dismissal.

### 2. *DarkOwl cannot show any damage to its business or property from Atlas allegedly accessing and obtaining a screenshot of its data.*

Even if DarkOwl's allegations of a hack or fraudulent login were sufficiently alleged (and they were not), Atlas argued in its motion that the CROA "require[s] proof of some activity vis-à-vis the information other than simply gaining access to it," Mot. at 14 (citing *P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC.*, 428 F.3d 504, 509 (3d Cir. 2005); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 278 (3d Cir. 2016).) Without addressing Atlas's caselaw, Dark Owl claims that it is a misreading of the statute because the "five different liability provisions" do not "require proof of illicit activity." Opp. at 12. DarkOwl's argument not only ignores

---

[8]    Sometimes styled as "without authorization".

[9]  The same is true for the other Counterclaim Plaintiffs. AccuZIP Counterclaims ¶¶ 58–63; Alesco Counterclaims ¶¶ 51-66; PCM Counterclaims 72–76; Searchbug Counterclaims ¶¶ 68–73; US Data Counterclaims ¶¶ 74–79. Even if it had been alleged, a recklessness theory regarding the alleged hacking or fraudulent login, makes little sense. Those types of acts are done purposefully or knowingly, not recklessly. Regardless, as noted above, Counterclaim Plaintiffs do not allege a reckless violation of the CROA, they only argue it in briefing.

published Third Circuit authority, it ignores the requirement to show "damage[] in business or property." N.J.S.A. 2A:38A-3. DarkOwl's allegations of damage to property are entirely conclusory and none are explicitly tied to this theory of CROA violation. See, e.g., Counterclaims ¶¶ 49-54 (alleging both theories of CROA violation and stating that it was damaged in "business and/or property" including "business disruption, diversion, and expenditure of resources, and loss of business.") And, as Plaintiffs explained in their Motion, because DarkOwl does not and cannot allege any attempt to monetize the information it alleges Atlas took as a result of the alleged hacking or fraudulent login, DarkOwl cannot show damages in business from those alleged activities. This Court should follow *PC Yonkers* and *In re Nickelodeon* and dismiss the CROA counterclaims because DarkOwl failed to allege more than non-harmful taking of data. See Mot. at 14 (discussing these cases).

### B. Nondisclosure Request Email Theory: Counterclaim Plaintiffs Do Not State A CROA Claim Based On The Theory That Plaintiffs Sent A Large Volume of Nondisclosure Request Emails.

DarkOwl's other theory of CROA liablity is that Atlas violated the CROA through a "spam attack," wherein it "purposely waited until it amassed over 19,000 'assignors' and knowingly transmitted ~48,000 emails during holidays." Opp. at 15.[10] This theory of CROA violation fails because DarkOwl does not plausibly allege that transmitting the

---

[10] The other Counterclaim Plaintiffs make similar arguments. AccuZIP Opp. at 22; Alesco Opp. at 22; PCM Opp. at 21; Searchbug Opp. at 10; US Data Opp. at 19–20.

nondisclosure requests damaged DarkOwl's computer systems or business nor that transmitting these legally required notices to a publicly available email address was unauthorized or that Plaintiffs acted with the required scienter in transmitting the emails.

### 1. Counterclaim Plaintiffs do not plausibly allege that sending nondisclosure requests caused damages

It is undisputed that to state a claim under the CROA, a plaintiff must allege damages to business or property. NJSA 2A:38A-3. Plaintiffs' Motion pointed out the gross deficiencies in DarkOwl's damages allegations. DarkOwl glibly responds that it adequately alleged damages, "including operational and business disruption flowing from Atlas's conduct, system and email impairment, emergency responses, diversion of personnel and resources, lost customers and prospects, revenue loss, and reputational harm." Opp. at 18.[11] And it wrongly frames Atlas's argument as improperly seeking a certain quantum of damages." *Id.*

There are three main problems with DarkOwl's damages argument: (1) it relies on categories of damages that are not plead; (2) it does not meaningfully address Plaintiffs' argument that any purported business loss was a result of DarkOwl's own

---

[11] The other Counterclaim Plaintiffs' arguments are substantially similar. Alesco Opp. at 23 ("Atlas' attack directly disrupted Alesco's business operations, overwhelmed Alesco's email and systems, and caused 'disruption of use as a result,'" as well as forced Alesco to "divert resources" to "address the cyberattack"); PCM Opp. at 23–24 (same); Searchbug at 11 (same); US Data Opp. at 20–21 (same); Accuzip Opp. at 23 (same, but adding "exhausted storage capacity").

decision to leave the New Jersey market; and (3) it does not meaningfully address the argument that the damages allegations are conclusory. These problems are each addressed in turn below.[12]

       *i.* *Counterclaim Plaintiffs rely on categories of damages that are not in the Counterclaims.*

DarkOwl tries to bolster its deficient allegations with (still conclusory) damages categories that are not actually alleged in their Counterclaims. Compare Opp. at 18 (listing damages categories identified above without citation to counterclaims) with Counterclaims ¶¶ 31, 50, 51, 46, 47, 57, 61, 62 (no allegation of diversion of personnel, no allegation of lost customers and prospects, no allegation of "reputational harm," no allegations of system impairment, no allegation of lost revenues other than as a result of its own decision to "refus[] to sell its product" in New Jersey.).[13] It is hornbook law that

---

[12] DarkOwl argues that it does not need to show that it damaged computer data; only that it was damaged in business or property. Opp. at 18. It confuses two different elements of the CROA. In particular, it confuses the requirement to show that a plaintiff "was damaged in business or property" with the substantive elements of several of the CROA subsections. *See also* AccuZIP Opp. at 22–23; Alesco Opp. at 23–24; PCM Opp. at 22–23; Searchbug Opp. at 11–12; US Data Opp. at 19–20. For example, under the CROA, DarkOwl must show that unauthorized "altering, damaging, taking or destroying of a computer, computer system or computer network." *See e.g.* N.J.S.A § 2A:38A-3(b). New Jersey cases sometimes shorthand this to "damaging computer data" and Plaintiffs reasonably also used that term. *See* Mot. at 11-12. As discussed in *Motion* and herein, DarkOwl does not show any unauthorized "altering, damaging, taking, or destroying of a computer, computer system or computer network."

[13] The other Counterclaim Plaintiffs make the same mistake. *Compare* the Opposition brief citations in n. 12 above, *with* Alesco Counterclaims ¶ 49 (not alleging email system being overwhelmed (just systems generally)); AccuZIP Counterclaims ¶ 49

"a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997); *See also Nayak v. CGA L. Firm*, No. 1:13-CV-2533, 2014 WL 70085, at *1 n.1 (M.D. Pa. Jan. 9, 2014) ("When ruling on a motion to dismiss, we are limited to the facts in the complaint, and thus will not consider any of the additional allegations made by Plaintiff in his brief."). DarkOwl cannot rely on these unpled categories of damages. Its CROA claim alleges only "business disruption, diversion and expenditure of resources and loss of business." Counterclaims ¶ 51.[14]

---

(same and not alleging exhausted storage capacity); PCM Counterclaims ¶ 40 (alleging overwhelmed email but not systems more generally); Searchbug Counterclaims ¶ 51 (alleging "flood" of emails but not alleging email or other systems overwhelmed); US Data Counterclaims ¶ 29 (same).

Additionally, to the extent that damages alleged in the counterclaims are related to investigating Atlas's putative spam attack, they are not cognizable. Mot. at 21. Counterclaim Plaintiffs do not rebut this argument. Of course, as discussed below, the damages allegations are so vague and conclusory that it is difficult to tell what the damages are for. Vague and conclusory allegations of damages that could be related to costs of investigation are also contained in AccuZIP, PCM, Searchbug, and US Data's counterclaims. AccuZIP Counterclaims ¶ 56; PCM Counterclaims ¶ 61; Searchbug Counterclaims ¶ 70; US Data Counterclaims ¶ 61. In noting these costs, the other Counterclaim Plaintiffs do not address Atlas's argument. *See* US Data Opp. at 17, 21 n. 9; PCM Opp. at 23 n. 8; Searchbug Opp. at 11-12; AccuZIP Opp. at 24.

[14]      While not in the CROA section, DarkOwl also alleged "harm" to "its computer systems, its email system, its business." Counterclaims, ¶ 47. *See also* AccuZIP Counterclaims ¶¶ 60, 69 (limiting damages);  Alesco Counterclaims ¶¶ 56, 63 (same); PCM Counterclaims ¶¶ 68, 74 (same); Searchbug Counterclaims ¶ 70 (same); US Data Counterclaims ¶¶ 69, 76 (same).

*ii. DarkOwl's "business damages" were not caused by Plaintiffs.*

DarkOwl's damages argument ignores that its only factual allegations of lost customers or prospects (e.g. business damages) are allegations that it "refus[ed] to sell its product to New Jersey police and law enforcement agencies and to any cybersecurity companies based in New Jersey since the start of the instant litigation" and thus "lost business opportunity with New Jersey law enforcement." *See* Mot. at 21; Opp. at 20; Counterclaims ¶ 46. As discussed below in the tortious interference section, DarkOwl cannot seek damages for its own business decisions, and any other business loss remains entirely speculative and conclusory.[15] *See also* Motion at 21-23.

And even if DarkOwl could somehow pursue damages for its own decision to leave the New Jersey market, DarkOwl does not meaningfully address Atlas's argument that DarkOwl itself admits that it did not pull out of the New Jersey market until after this litigation began, some ten months after it received the first nondisclosure requests from Covered Persons. Mot. at 22–23. DarkOwl argues only "the fact that some of business damage DarkOwl pled appeared later in time . . . does not diminish the fact that DarkOwl was damaged by Atlas's conduct." Opp. at 20. This misses the point. The fact

---

[15]    PCM and US Data also allege that they lost revenue because of their decision to leave New Jersey. PCM Counterclaims ¶ 82; US Data Counterclaims ¶ 85. Like DarkOwl, they fail to address Atlas's argument that Atlas is not liable for that voluntary decision. And neither they nor DarkOwl address Atlas's further argument that Counterclaim Plaintiffs do not have standing to allege damages related to leaving the New Jersey market. Mot. at 23 n. 33.

that DarkOwl made the decision months later, long after the requests (emails) at issue in the initial litigation had been received, *and only after being sued*, renders it highly implausible that any decision to leave the market is due to the emails themselves, as opposed to a reaction to being sued for noncompliance with Daniel's Law. Under *Iqbal/Twombly*, such implausibility warrants dismissal. *See Iqbal*, 556 U.S. at 678.

### iii. Counterclaim Plaintiffs do not address Atlas's argument that their damages are conclusory

Even though Plaintiffs' Motion focused on the fact that DarkOwl's alleged categories of damages from nondisclosure requests (emails) are entirely conclusory, Mot at 19-20, DarkOwl does not and cannot point to specific allegations that explain how its computer systems or email systems were harmed, how its business was disrupted, or what resources were expended for what reasons. Opp. at 18.[16] Its own cases confirm that this failure is fatal. *See, e.g.*, *Rodgers Grp., LLC*, 2022 WL 4095785, at *7 (dismissing CFAA claim where plaintiff alleged "Defendants modified access rights to accounts in the computer system that required [plaintiff] to remediate" and caused "$5,000 in damages to its computer system" because there were not sufficient "further factual allegations—such as, which of Defendants' actions caused monetary damages, how, to what extent, and how that damage was remediated.")

---

[16] The same goes for the others. Alesco Opp. at 23; PCM Opp. at 23–24; Searchbug at 11; US Data Opp. at 20–21; Accuzip Opp. at 23.

14

Indeed, DarkOwl's damages allegations are arguably more lacking than those in *Rodgers*. The damages allegations in the Counterclaims are so vague and conclusory that it is impossible to discern (1) which theory of liability generated which type of harm; or (2) whether any purported harm is cognizable. For example, what caused DarkOwl's alleged business disruption? Was it merely due to the need to process and deal with thousands of lawful nondisclosure requests? It is impossible to tell from DarkOwl's threadbare allegations, but if so, such business disruption is not cognizable – it is just compliance with DarkOwl's legal obligation under Daniel's Law when it is in the business of profiting from the sale of the information of millions of people. It is equally difficult to tell whether DarkOwl alleges that particular categories of damages were caused by the delivery of emails or by the alleged hack/fraudulent login. Was harm to the computer system caused by the alleged unauthorized hacking/access *or* the email "attack." None of the damages allegations are supported by sufficient facts to tell. Courts routinely dismiss claims where, like DarkOwl, a party fails to allege facts to support conclusory and generalized allegations of damages. *See Bramshill Invs., LLC v. Pullen*, No. CV 19-18288, 2020 WL 4581827, at *5 (D.N.J. Aug. 10, 2020) (dismissing CROA claim because of its conclusory allegations that its business and its operations were damaged) (citing *In re Nickelodeon*, 2014 WL 3012873, at *18 (determining the complaint was "devoid of factual allegations regarding the 'business or property' damage Plaintiffs have suffered as a result of Defendant" and holding that "[w]ithout

allegations demonstrating plausible damage to 'business or property,' Plaintiffs cannot state a claim for relief under the CROA.")).[17]

DarkOwl tries to obscure these problems by pointing to the inapt, unpublished, New Jersey state court case of *Atlas v. Reipro*, decided under different pleading standards merely because it also involved Daniel's Law nondisclosure requests received via email.[18] But the *Reipro* plaintiffs supported their claims with far more specific factual allegations than here.[19]

*First,* in *Reipro*, the plaintiff alleged that "tens of thousands" of nondisclosure requests were sent "within a *few hours*." DarkOwl Dkt. No. 70-1 at 12, 21 (emphasis added). Plaintiff in *Reipro* further alleged that all requests were sent over those few

---

[17] DarkOwl attempts to distinguish *Bramshill*, claiming that unlike that case, "DarkOwl alleges concrete, non-speculative categories of harm tied directly to Atlas's conduct." Opp at 19–20. But there is no meaningful distinction between the allegations in Dark Owl's counterclaims and *Bramshill*. As in DarkOwl, the *Bramshill* plaintiff also alleged conclusory categories of damages such as "loss of reputation and good will". *Bramshill*, 2020 WL 4581827 at *5. The issue there, as here, is that there were no factual allegations to support those conclusory damages. *Id.* DarkOwl does not even attempt to distinguish *Nickelodeon*. The other Counterclaim Plaintiffs address neither *Bramshill* nor *Nickelodeon.*

[18] The other Counterclaim Plaintiffs largely rely on the same cases as DarkOwl. AccuZIP Opp. at 10–11, 23–24; Alesco Opp. at 10–11, 23–24; PCM Opp. at 10–11, 23; Searchbug Opp. at 12; US Data Opp. at 11, 21.

[19] The same or similar timeframe is alleged in the other counterclaims. AccuZip Counterclaims ¶ 46; Alesco Counterclaims ¶ 35; PCM ¶ 32; Searchbug ¶ 50; US Data ¶ 47.

hours. *Id.* at 21. That is very different from the allegations here, of an average 7,000 emails per day, spread out over the course of a day, and spread out over multiple days. Counterclaims ¶ 26.

*Second,* the *Reipro* plaintiff was also more specific about *how* their computer system was harmed. It claimed that the volume of emails "incapacitated" its "computer system and computer network," *Id.* at 22,[20] which meant that "new customers were not able to utilize the services for the trial period or sign up to pay for Defendant's services." DarkOwl Dkt. No. 70-1 at 12. By contrast, DarkOwl alleged only that the emails "had the appearance of a DDOS attack" and "[a]s such, Dark Owl suffered significant distraction from business, disruption, and expenditure of resources in response to the attack." DarkOwl Counterclaims ¶ 31.[21] As discussed above, it is unclear what the nature

---

[20] Searchbug and US Data similarly do not allege system damage. Searchbug Counterclaims ¶ 51 (alleging "flood" of emails but not alleging email or other systems overwhelmed); US Data Counterclaims ¶ 29 (same). The others make vague allegations of systems being "overwhelmed." Alesco Counterclaims ¶ 49; AccuZIP Counterclaims ¶ 49; PCM Counterclaims ¶ 40.

[21] The other Counterclaim Plaintiffs make equally vague and conclusory allegations of damages. US Data Counterclaims ¶ 85 (alleging a "massive disruption to services" without explaining what was disrupted); Searchbug ¶ 65 (alleging a diversion of "customer service time" without explaining whether this impacted a customer); Accuzip Counterclaims ¶ 60 (alleging requests "prevented timely access to legitimate customer inquiries" without alleging the nature of the delay had any impact of customers, and alleging the "possibility of lost or delayed client communications" without alleging that they were lost or delayed); Alesco Counterclaims ¶ 49 (alleging "diverting significant resources and staff time from legitimate customers" without explaining how this adversely impacted a single customer). PCM alleges only that the nondisclosure requests "completed [*sic*] bogged it email account . . . making it impossible to locate and respond

17

of DarkOwl's distraction or business disruption was or what resources were expended or why.

And despite its more specific factual allegations, the court in *Reipro* could only "glean" a sufficiently alleged CROA violation. That is important because "federal pleading standards are generally more stringent than those in New Jersey state courts post-*Twombly*." *Ocean City Exp. Co. v. Atlas Van Lines, Inc.*, No. CIV. 13-1467 JBS/KMW, 2013 WL 3873235, at *4 (D.N.J. July 25, 2013); *see also Crozier v. Johnson & Johnson Consumer Companies, Inc.*, 901 F. Supp. 2d 494, 500 (D.N.J. 2012) (explaining that New Jersey state pleading standards are "rooted in the pre-*Twombly* and *Iqbal* jurisprudence"). New Jersey's "generous" and "indulgent" standard asks whether a claim is merely "suggested" by the facts. *Nostrame v. Santiago*, 213 N.J. 126-27 (2013). Its state courts are required to deny a motion to dismiss "if a cause of action may be gleaned even from an obscure statement of claim." *Id.* at 109. Rather than indulgently searching for the hint of a claim, federal courts require a complaint to state a claim to relief that is *plausible* on its face.'" *Iqbal*, 556 U.S. at 678 (internal quotation marks

---

to actual, legitimate customer and new customer emails that were necessary for business." PCM Counterclaims ¶ 40. But in alleging that the nondisclosure requests were "making it impossible to locate and respond," it is unclear what impact that had. For instance, it is unclear how long the alleged impossibility existed for, and whether there were any consequences from customers.

omitted). In short, the unpublished *Reipro* decision[22] tells the Court nothing about the issues presented in this Motion.

The remaining cases DarkOwl relies on from the motion to dismiss stage only highlight the deficiencies in its own pleadings. *See Pulte Homes Inc. v. Laborers' Int'l Union of N. Am.,* 648 F.3d 295, 298-99 (6th Cir. 2011) (plaintiff alleged how harm to email system from mass emailing occurred by alleging that email system limited number of emails in inbox and alleged precise nature of the harm - an inability to access or send business-related emails); *CC Ford Grp. W., LLC v. Johnson*, C.A. No. CV 22-4143 (MAS)(TJB), 2025 WL 181206, at *19 (D.N.J. June 30, 2025) (allegations that defendant accessed and deleted data on laptop and stole confidential and proprietary information, along with "alleg[ing], at length, the business damages is suffered as a result of [] deleting and taking [] proprietary information.").[23]

---

[22] Indeed, the *Reipro* counterclaim has not proceeded substantively in any way and will be the subject of another forthcoming motion to dismiss for failure to state a claim despite the more liberal state court pleading standards.

[23] DarkOwl's remaining cases—all CFAA cases—were not decided on a motion to dismiss and therefore do not address the pleading standard. The cases also involve bad-faith emails. None involve communications that are anything like the lawful nondisclosure requests at issue here, which Daniel's Law requires to be sent to trigger its protections. And the cases involve clear, specific damages. See, e.g., *United States v. Carlson*, 209 F. App'x 181, 183-84 & n. 8 (3d Cir. 2006) (defendant spoofed email addresses and sent thousands of emails from the spoofed address, which resulted in thousands of people responding to the emails, resulted in "shut[ting] down its server", and "purging" of all victim's email "causing valuable business-related e-mails to be permanently lost"); *Am. Online, Inc. v. Nat'l Health Care Disc., Inc.*, 121 F. Supp. 2d 1255, 1259 (N.D. Iowa 2000) (detailed allegations of 76 million pieces of spam mail

### 2. *Counterclaimants do not adequately allege that any Atlas actions with respect to delivery of nondisclosure request emails were knowing or unauthorized.*

In its Motion, Atlas argued that DarkOwl did not plausibly allege that transmitting the emailed nondisclosure requests was without authorization since these were communicative emails required by Daniel's Law. *See* Mot at 17–18. DarkOwl ignores this argument completely.[24] That is because, as its own cases confirm, there is no legitimate response. Where, as here, communicative emails are transmitted to a publicly available email address, a plaintiff cannot demonstrate that the emails were unauthorized. *See Pulte,* 648 F.3d at 304 (without allegation that defendant had no right to send even a single email, complaints about number, frequency and content of

---

by individuals who knew they would be "shut down" if AOL caught their scheme, email containing fraudulent information, failing to heed demands to stop from a state Attorney General and AOL, and costing AOL $.00078 per spam email (nearly $60,000 total)). *Fidlar Techs. v. LPS Real Est. Data Sols., Inc.*, 810 F.3d 1075 (7th Cir. 2016) is likewise helpful to Atlas. It notes in dicta that mass emails may violate the CFAA, but the case did not involve that issue. *Id.* at 1084-85. The court affirmed summary judgment under the CFAA because plaintiff had not shown any "actual disruptions in service." *Id.* at 1085. Here, DarkOwl's allegation of disruption is conclusory. Ite does not describe it with any factual specificity—e.g., the length, nature, or extent of any disruption are unalleged. Finally, *United States v. Drew*, 27 F. App'x 164 (4th Cir. 2001) is simply irrelevant as it merely affirms a criminal conviction under plain error review, cites no authority for the relevant issue, and limits its analysis of the issue to a sentence.

[24] The other Counterclaim Plaintiffs similarly ignore Atlas's argument.

communications to a public email address does not show unauthorized access).[25] As in *Pulte,* DarkOwl does not allege that anyone needed a password or code to transmit an email to DarkOwl. *See generally* Counterclaims. Nor does it allege that there were any public warnings regarding the number of emails that it could be sent or over what period of time. Mot. at 17.[26]

DarkOwl instead attempts to shift from a theory of unauthorized access to a theory that Atlas acted in a "reckless manner" under subsection (e). But, as discussed above, in Section I.A.1, DarkOwl does not actually *allege* that Atlas acted in a reckless manner. Because DarkOwl cannot plausibly allege the emails were unauthorized, and it did not allege that they were reckless, the CROA claim fails as a matter of law.[27]

---

[25] All nondisclosure requests in these cases were sent to email addresses that the Counterclaim Plaintiffs publicly disclosed. But at this stage, what is key is that Counterclaim Plaintiffs made no allegations that these email addresses were not public.

[26] The other Counterclaim Plaintiffs also make no allegations regarding the number of emails that could be received over a period of time or needing a password or code to email the account that the nondisclosure requests were sent to.

[27] In any event, its factual allegations undermine finding recklessness. As discussed in the Motion, DarkOwl alleges that it is an incredibly sophisticated operator, providing cybersecurity and threat intelligence services. Under these circumstances, it is not plausible to conclude that Atlas knew or acted recklessly in thinking that DarkOwl could not handle receiving thousands of emails per day. Mot. at 13. For the same reasons, DarkOwl also fails to allege sufficient facts to plausibly infer any conduct by Plaintiffs was purposeful or knowing. *See also* Mot. at 17-19 (additional unrebutted arguments regarding the conclusory allegations that Atlas acted purposefully and/or knowingly).

DarkOwl again tries to make *Reipro* its savior, arguing that in that case, the state trial court allowed a CROA claim based on voluminous nondisclosure requests (emails) to proceed. But, as discussed above, that case involved different facts, was decided under a different pleading standard, and the *Reipro* plaintiff apparently alleged reckless conduct. In short, *Reipro* cannot save DarkOwl's claims. That meaningfully distinct case is irrelevant to how DarkOwl's specific factual and legal allegations should be handled under *Iqbal*/*Twombly* pleading standards.

## II.    Counterclaim Plaintiffs Fail to State a Claim Under the Computer Frauds and Abuse Act.

Four Counterclaimants—Accuzip, Alesceo, PCM and US Data—also bring claims under the Computer Fraud and Abuse Act ("CFAA"). As Plaintiffs discussed in their Omnibus Motion, the CROA and CFAA are generally treated similarly in the Third Circuit, except that the CFAA has an additional independent loss threshold. *See* Mot. at 12 n. 21. *See also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 278 (3d Cir. 2016) (recognizing that "courts seem to have interpreted the New Jersey Act in harmony with its federal counterpart") (citing *Mu Sigma, Inc. v. Affine, Inc.*, No. 12–cv–1323 (FLW), 2013 WL 3772724, at *9–10 (D.N.J. July 17, 2013) (dismissing claims under the CROA and CFAA for identical reasons). Given that these claims are essentially treated the same, Accuzip, Alesceo, PCM, and US Data's CFAA claims fail for the same reasons that their CROA claims fail. In a two-sentence paragraph, three of the four Counterclaim Plaintiffs alleging CFAA violations note that the CFAA and CROA "are

different," but do not identify any differences that relate to Plaintiffs' arguments. AccuZIP Opp. at 19; Alesco Opp. at 19; PCM Opp. at 19. The fourth does not differentiate between the causes of action at all. *See* US Data Opp. at 9–17. Accordingly, Plaintiffs' motion to dismiss the Counterclaim Plaintiffs' CFAA claims should be granted.

## III.    Counterclaim Plaintiffs Fail to Plead Tortious Interference

DarkOwl falls far short of meeting its pleading burden on its claim for tortious interference.[28] DarkOwl was required to, but did not allege the loss of even a single lost customer, failed to allege that Atlas knew and intended to interfere with a specific contractual relationship, and cannot show that Atlas caused DarkOwl to lose any customers because DarkOwl itself voluntarily left the market. In an attempt to sidestep these fatal deficiencies, DarkOwl either ignores these flaws altogether, ignores Atlas's case law, or offers patently false distinctions with Atlas's caselaw. As discussed below, under these circumstances, allowing DarkOwl to move forward with a claim for tortious interference based on nothing more than the conclusory allegation that it lost business would turn *Iqbal*/*Twombly* on their head.

---

[28] DarkOwl bizarrely spends pages addressing whether it has alleged maliciousness in its tortious interference claim. But that element is not at issue in this motion. Should its tortious interference claim survive this motion, which it should not, maliciousness would become an issue later in this case.

### A. Counterclaim Plaintiffs failed to allege the loss of a specific customer.

Plaintiffs' Motion relied on well-established caselaw requiring a tortious interference plaintiff to identify a *specific* prospective customer or contract that it lost or could have acquired. Mot. at 25-26. DarkOwl does not address this case law whatsoever. Instead, DarkOwl simply argues that Atlas's proposition is wrong, relying on two unpublished cases that it claims supports its stance. Opp. at 22–23.[29]

The overwhelming weight of authority—including from the Third Circuit and published authority—requires plaintiffs to identify at least one specific customer that was lost. *Am. Millennium Ins. Co. v. First Keystone Risk Retention Grp., Inc.*, 332 F. App'x 787, 790 (3d Cir. 2009) (requiring pleading of a specific lost customer); *Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*, 516 F. Supp. 3d 407, 422 (D.N.J. 2021) ("To intentionally interfere with prospective advantage, a defendant must have knowledge of a specific contract and intend to interfere with that contract. Allegations that a defendant intended to interfere with a category of contracts or a plaintiff's business more generally are not enough—a tortious interference claim requires more targeted actions."); *New Jersey Physicians United Reciprocal Exch. v. Boynton & Boynton, Inc.*, 141 F. Supp. 3d 298, 310 (D.N.J. 2015) ("[The] vague allegation that unknown, prospective customers may have been lost [is not] sufficient to survive dismissal."); *Shaikh v. Dept. of Banking*

---

[29] The other Counterclaim Plaintiffs take a similar approach. AccuZIP Opp. at 25–26; Alesco Opp. at 26; PCM Opp. at 25; Searchbug Opp. at 14; US Data Opp. at 23.

*& Ins. Div. of Ins.,* Civ. No. 19-14092, 2024 WL 5118429, at *6 (D.N.J. Dec. 16, 2024) (requiring allegation of a specific lost customer); *Magic Reimbursements LLC v. T-Mobile USA, Inc.*, Civ. No. CV22-02121GCTJB, 2023 WL 4866930, at *8 (D.N.J. July 31, 2023) (same); *MedWell, LLC v. Cigna Corp.*, Civ. No. 20-10627, 2023 WL 4045089, at *5 (D.N.J. June 16, 2023) (same); ) *Tiger Supplies Inc. v. MAV Assocs. LLC*, Civ. No. 20-15566, 2022 WL 1830796, at *8 (D.N.J. June 3, 2022) (same); *Novartis Pharms. Corp. v. Bausch & Lomb, Inc.*, Civ. No. 07-5945, 2008 WL 4911868, at *7 (D.N.J. Nov. 13, 2008) (dismissing tortious interference claim where plaintiff did "not identify one physician, company, or other entity, with whom it currently does business, or has the reasonable expectation of doing business in the future").[30]

DarkOwl's meager case law to the contrary reflects the law prior to *Iqbal*/*Twombly*, something Atlas's brief addresses (Mot at 25-26) and DarkOwl's opposition leaves unanswered. *See* Opp. at 22.[31] Cases that have examined these two competing lines of authority have concluded that *Iqbal*/*Twombly* pleading standards require the identification of at least a single specific lost customer. *Magic Reimbursements*, 2023 WL 4866930, at *8-9 (disregarding line of "more lenient cases",

---

[30]    For space reasons, Plaintiffs cannot cite all recent cases requiring the identification of a specific customer.

[31] The other Counterclaim Plaintiffs rely on *Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 305 (2001), a state case that does not reflect federal pleading standards and predates *Iqbal/Twombly* anyway.

as inconsistent with *Iqbal*/*Twombly*); *Fora Fin. Holdings, LLC v. Dream Data Servs., LLC.*, No. CV2300780GCJDB, 2023 WL 6049835, at *6-7 (D.N.J. Sept. 13, 2023) (same).[32] Requiring a plaintiff to identify a single specific lost customer is not a high threshold. This Court should follow this well-reasoned authority and dismiss DarkOwl's tortious interference claim as implausibly pled since DarkOwl does not plead even a single specific lost customer.

### B. Counterclaim Plaintiffs fail to address the lack of allegations concerning Atlas's awareness of a business relationship.

Plaintiffs' Motion also argued that Counterclaim Plaintiffs were required to, but failed allege that Atlas knew about the specific relationship that it allegedly interfered with. Mot. at 26-27 (collecting cases). Counterclaim Plaintiffs do not  address this argument at all and therefore do not rebut it. The tortious interference claim can, and should, be dismissed on this basis alone.

---

[32] DarkOwl's cases do not address the large number of recent cases holding that loss of a specific customer is required, nor the reasoning for the requirement.  *See, e.g.*, *Intervet, Inc. v. Mileutis*, Civ. No. 15-1371, 2016 WL 740267, at *8 (D.N.J. Feb. 24, 2016); *Heartland Payment Sys., LLC v. Carr,* 2021 WL 302918, at *7 (D.N.J.  Jan. 29, 2021). The analysis in DarkOwl's cases principally rely on *Slim CD, Inc. v. Heartland Payment Sys., Inc*, No. CIV. A. 06-2256, 2007 WL 2459349 (D.N.J. Aug. 24, 2007). *See Intervet,* 2016 WL 740267, at *8; *Carr,* 2021 WL 302918, at *7 n. 4. *Slim* reflects the old pleading standards. *See, e.g.*, *CMC Food, Inc. v. Mitlitsky Eggs, LLC*, C.V. 18-8939, 2019 WL 5206104, at *8 n. 12 (D.N.J. Oct. 16, 2019) (rejecting *Slim* and other cases for this reason).

### C. Counterclaim Plaintiffs do not allege that they would have received the anticipated economic benefit, but for the interference

Atlas's motion pointed out that DarkOwl's allegations cannot show that DarkOwl would have received the anticipated economic benefit for the interference because its affirmative allegations demonstrate any loss of business was a result of DarkOwl's own decision to leave the New Jersey market. Mot. at 27-28.[33] In response, DarkOwl argues without explanation that leaving the New Jersey market "address[ed Atlas's interference and prevent[ed] further harm." Opp. at 26. DarkOwl's argument misses the point. Voluntarily terminating customer relationships does not prevent receipt of further nondisclosure requests (or other lawful privacy or regulatory requests), or the loss of customers, and, as Atlas's Motion demonstrated, the law does not allow one to voluntarily terminate business relationships and then seek damages for losses stemming from that voluntary decision.

DarkOwl's attempts to distinguish case law holding that tortious interference does not apply to losses caused by a plaintiff's voluntary actions are specious. DarkOwl argues that *Woodend v. Lenape Reg'l High Sch. Dist.,* 535 Fed. App'x 164, 167-68 (3d Cir. 2013), which involved a coach who resigned from his job due his supervisor's harassment, is distinguishable because Woodend "did not possess a protectable right to

---

[33] PCM and US Data also allege that they voluntarily decided to leave the New Jersey market. PCM Counterclaims ¶ 82; US Data Counterclaims ¶ 85. But they do not try to distinguish Atlas's cases or address this argument. PCM Opp. at 27–28; US Data Opp. at 25–26.

future employment," whereas DarkOwl's "protectable right is its ability to contract with and continue to provide services to its customers, including New Jersey law enforcement." Opp. at 26. But DarkOwl's point of distinction gets *Woodend* completely wrong. The Court in *Woodend* found that the plaintiff "had a protected interest in his employment"; he just lost it "when he resigned." *Id.* at 168. It held that the plaintiffs' superior's "conduct could not have caused a loss of future gain because the loss was caused by Woodend's voluntarily resignation." *Id.* at 167–68. *Woodend*'s logic applies with equal force here: whatever right counterclaimants had to continue in their relationships with their (conclusorily alleged) New Jersey clients and future clients, their voluntary decision to leave the New Jersey market caused the loss of those relationships, not Atlas's putative email "attack".

DarkOwl's attempt to distinguish *B&M Auto Salvage & Towing, LLC v. Twp. of Fairfield,* C.A. No. 11–2107, 2013 WL 5434717, at *7 (D.N.J. Sept. 27, 2013) is likewise based on false claims about that case. In *B&M,* plaintiffs cancelled a contract to sell their junkyard because the government had failed to renew the required junkyard license. *Id.* at *2-3. The court granted summary judgment to dismiss the tortious interference claim, holding that plaintiffs "voluntarily cancelled" the contract to sell the junkyard. *Id.* at *7. DarkOwl argues that though the Court "mentioned" that plaintiff cancelled the contract "there was no evidence that cancellation was due to the

28

defendant's conduct." Opp. at 26.[34] Not so. The *B&M* plaintiffs argued that they cancelled the contract because of the government defendant's conduct, but that fact was irrelevant given the voluntary cancellation. *B&M*, 2013 WL 5434717, at *7. Just as the *B&M* plaintiff's voluntary decision to cancel the contract was the legal cause of any losses, so too, DarkOwl's voluntary decision to leave the New Jersey market is the legal cause of its alleged losses.[35]

## IV.    Counterclaim Plaintiffs Fail To Allege Any Fraud Committed By Atlas

Counterclaimants' Opposition makes clear that it cannot make out a claim for fraud under any of the three factual theories it is pursuing: (1) allegedly fraudulent representations that DarkOwl is a data broker; (2) allegedly false representations made in nondisclosure requests (emails) that they were from "covered persons" and the information was not protected information; and (3) allegedly false representations to gain access to DarkOwl's computer system in order to obtain the unlawful disclosure evidence screen shot included in the Complaint.

---

[34]    There are also no factual allegations in DarkOwl's Counterclaims suggesting that anything Plaintiff allegedly did required DarkOwl to leave the New Jersey market. *See* Section I.B.1.ii above (discussing timing of DarkOwl's withdrawal from the market).

[35]    DarkOwl vainly attempts to address their failure to identify any foreseeable and nonspeculative damages by pointing to categories of damages that have nothing to do with damages from lost current or prospective business (and are indistinguishable from the other damages they seek) and therefore do not support a claim for tortious interference. *See* Opp. at 25 (identifying that Dark Owl was "forced" to "divert resources" and that receiving nondisclosure requests "disrupted normal operations, caused harm to DarkOwl's system, and caused financial harm.")

## A. DarkOwl's Fraud Claims Based On Alleged Misrepresentations About DarkOwl Fail.

Atlas's opening brief sensibly argued that fraud claims based on alleged misrepresentations *about* DarkOwl failed because the representations were not made to DarkOwl and DarkOwl could not reasonably rely on any such misrepresentations given that DarkOwl knew the truth about its own services.[36] Mot. at 30-31. In response, DarkOwl clarifies that its theory of fraud based on representations *about* DarkOwl is that Atlas told assignors that DarkOwl was a data broker, Atlas knew that *assignors* would rely on the representations and ask DarkOwl to cease disclosure of their protected information, and that DarkOwl was then forced to take action in response to the receipt of nondisclosure requests. Opp. at 32-33. But making (allegedly) false statements about DarkOwl to third parties to cause those third parties to assert their rights against DarkOwl is not fraud on DarkOwl. If anything, it is more akin to a claim for defamation (but cannot satisfy the elements of that [not pled] claim either). DarkOwl's argument that this theory satisfies the doctrine of indirect reliance grossly misconstrues that doctrine, which only serves to obviate the requirement that a defendant make the

---

[36] DarkOwl does not defend its fraud claims based on alleged misrepresentations to Atlas's customers about Atlas's services. See Mot. at 30-31. As such, they have abandoned these claims. Moreover, US Data's Counterclaims did not make allegations regarding Atlas's statements about it being a data broker. *See generally* US Data Counterclaims

misrepresentation directly to the plaintiff under certain circumstances. [37] No

misrepresentation about DarkOwl was made to DarkOwl or was conveyed to DarkOwl.[38]

In addition, the doctrine of indirect reliance *does not* eliminate the fraud

requirement that a plaintiff show that they justifiably relied on a defendant's false

---

[37]    New Jersey law requires that representations be made to the plaintiff/counterclaimant to be actionable. NJ Civil Jury Instructions for Fraud, *available at* https://www.njcourts.gov/sites/default/files/charges/3.30E.pdf. As DarkOwl's own caselaw holds, "Under New Jersey law, the theory of indirect reliance allows a plaintiff to maintain a fraud action based upon a statement the plaintiff heard 'not from the party that defrauded him or her but from that party's agent or from someone to whom the party communicated the false statement with the intention that the victim hear it, rely on it, and act to his or her detriment.'" *Mortellite v. Novartis Crop Prot., Inc.*, 460 F.3d 483, 492 (3d Cir. 2006). In *Mortellite*, farmers claimed that they entered into a settlement with a company because they heard from other farmers that the company promised to pay for future damaged crops, despite language in the settlement agreement to the contrary. *Id.* at 491-92. While the court found that reliance unreasonable because of certain facts, *Id.* at 493, the case represents the typical way that indirect reliance works: defendant says something is false to person A, who does not know it is false, who then tells it to person B, who also does not know it is false. *Mortellite* also demonstrates that the party relying on the false statement still has to demonstrate that it relied on the statement and such reliance is reasonable, which it cannot where, as here, it knows the statement to be untrue.

[38]    DarkOwl argues that Atlas also made direct representations to DarkOwl through Atlas's website and through emails, but that does not cure the problem of justifiable reliance. In any event, the complaint contains no allegations that Atlas sent emails directly to DarkOwl (because Atlas did not), and no allegations that DarkOwl visited Atlas's website and read those representations, let alone allegations that would satisfy the stringent who, what, where, and when requirements of Rule 9(b) applicable to the Counterclaims. *See generally* Counterclaims. And the Counterclaims do not allege that Atlas ever stated on its website that DarkOwl was a data broker. Counterclaims, ¶¶ 9-10 (alleging only that Atlas described its own services as removing information from data broker websites and then included DarkOwl on the target list of companies). Even if Atlas had, such allegations would still be insufficient because DarkOwl did not allege that Dark Owl read any such misrepresentations. See *Id.*

statement. *See Caspersen as Trustee for Samuel M.W. Caspersen Dynasty Trust v. Oring*, 441 F. Supp. 3d 23, 38 (D.N.J. 2020) (justifiable reliance an element of fraud); *Mortellite*, 460 F.3d at 492 (granting summary judgment on fraud claim based on indirect reliance where plaintiffs failed to show justifiable reliance on the misstatement that had been repeated to them). It is self-evident that DarkOwl cannot demonstrate justifiable reliance because DarkOwl knew (and now alleges) that it was not a data broker. *Walid v. Yolanda for Irene Couture, Inc.*, 425 N.J. Super. 171, 181, 40 A.3d 85, 91 (App. Div. 2012) (quoting the Second Restatement of Torts) (Reliance cannot exist if someone who hears a misrepresentation "knows that it is false or its falsity is obvious to him.").

### B. Counterclaim Plaintiffs have not adequately pled fraud based on representations that assignors are covered persons.

#### 1. *DarkOwl's conclusory allegations do not satisfy 9(b).*

Without citing to any specific allegations, DarkOwl argues that its fraud pleadings based on Atlas's alleged misrepresentations that assignors are Covered Persons are not conclusory but "are adequately detailed and sufficiently alleged such that Atlas has notice of the facts underlying the fraud it perpetrated." Opp. at 24. But DarkOwl cannot cure conclusory allegations with an equally conclusory argument.

DarkOwl's failure to plead factual allegations to support its contention is especially problematic because DarkOwl is required to plead fraud claims with particularity under Rule 9(b). DarkOwl neither alleges which assignors fraudulently identified themselves as Covered Persons nor how many. Is DarkOwl alleging that one

assignor was not a Covered Person? Ten? Ten thousand? All of them? On which dates were the nondisclosure requests with fraudulent information received? What is the basis for DarkOwl's belief that assignors are not Covered Persons? None of this information can be gleaned from DarkOwl's counterclaim, yet it is necessary to understand the who, what, where, and when of the fraud. *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (Allegations must include "the who, what, when, where and how of the events at issue."); *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) ("[P]recision and some measure of substantiation" is essential for allegations of fraud.").[39] The failure to meet his pleading standard requires dismissal of any fraud claim based on this theory.[40]

---

[39]     To the extent that the fraud claims are based on the somewhat unintelligible contention that the nondisclosure requests did not satisfy the statutory prerequisites by failing to include information protected under the law, the same 9(b) arguments apply. If this is meant to argue that the phone numbers and home address identified in the nondisclosure request emails are not protected under the statute, again Counterclaimants fail to identify which emails and which information, and the basis for stating that the information is not protected under the law. If this contention is merely meant to say that the requests were missing information, then that fact should have been obvious to Counterclaimants and there is no basis for reliance. As for the theory that Atlas fraudulently represented that the emails were sent by the Covered Persons and not Atlas, even accepting this as true for the purposes of this motion (it is not), DarkOwl does not allege why such a representation would be material.

[40]     *See also* PCM Counterclaims ¶¶ 14, 17, 95–97; US Data Counterclaims ¶¶ 14–15, 103–04. And neither PCM or US Data offer any materially different argument than to address the conclusory nature of these allegations. PCM Opp. at 32–34; US Data Opp. at 29–33. PCM and US Data note "mismatched" addresses and phone numbers. PCM Opp. at 32; US Data Opp. at 32. But their only allegations on this point is that some Covered Persons' nondisclosure requests reveal multiple addresses and phone numbers for protection under Daniel's Law. PCM ¶ 31; US Data ¶ 46. Neither counterclaimant

## 2. *DarkOwl does not adequately allege scienter*

DarkOwl next takes issue with Atlas's argument that alleging a failure to verify the status of the assignors as Covered Persons does not satisfy the requirements of scienter. Opp. at 34. But DarkOwl does not address *any* of the cases Atlas cites for this argument. *Id.*; Mot at 33 n. 45 (collecting cases). Instead, relying on inapt caselaw based on federal prosecutions and federal forfeiture actions in connection with prosecution, DarkOwl argues that it alleged willful blindness. Opp. at 34-35. Even if one could set aside the fact that the word "willful" appears nowhere in the Counterclaims (meaning that DarkOwl did not actually allege such a theory) and even if willful blindness can be used to prove scienter in a New Jersey common law fraud claim (for which DarkOwl provides no case law), DarkOwl's factual allegations do not meet the high standard for willful blindness. Willful blindness exists "where the party is aware of the highly probable existence of a material fact but does not satisfy himself that it does not in fact exist. 'Such cases should be viewed as acting knowingly and not merely as recklessly.'" *Matter of Skevin*, 104 N.J. 476, 486 (1986). DarkOwl does not and cannot point to any alleged facts that show that Atlas would have believed that the assignors were not

---

considers the possibility of a Covered Person actually having more than one address or phone number that is eligible for protection under Daniel's Law, and nothing in the law suggests that it can only protect one address or one phone number. *N.J.S.A.* 56:8-166.1.

Covered Persons. [41] Indeed, Atlas and its attorneys have filed claims based on the assignors' status as Covered Persons, which strongly suggest that they believe that these individuals *are* Covered Persons since Atlas will have to present proof in order to prevail. And DarkOwl's argument does not comport with the reality that Atlas has *already* presented proof that these individuals are indeed Covered Persons, in multiple state courts, where such proof has been accepted. *See, e.g.*, Certification of Jessica A. Merejo, Ex. 1.

### 3. *DarkOwl does not adequately allege reliance and causation*

Because DarkOwl knows that it cannot satisfy the requirements of reliance and causation, it attempts to recast its allegations from affirmative misrepresentations to fraudulent omissions, and contends that "there is a presumption of reliance and causation due to Atlas's 'omissions of material fact[s]." Opp. at 35. [42] But "[m]isrepresentation and

---

[41]     PCM and US Data do not make a willful blindness argument. Instead, they argue that Atlas failed to verify, and therefore completely bypass Atlas's argument in its motion about how the failure to verify was conclusory and does not satisfy the scienter requirement. *Compare* Mot. at 33–34, *with* PCM at 35–36 *and* US Data Opp. at 34–35.

[42]     *See also* PCM Opp. at 30, 37; US Data Op at 28, 37. In reality, DarkOwl did not plead any fraudulent omissions. The word omission or omit appears nowhere in the counterclaims. To the contrary, DarkOwl alleged that Atlas "misrepresented that the tens of thousands of emails targeting DarkOwl were sent from 'covered persons' or otherwise constituted valid requests under Daniel's Law." Counterclaims, ¶ 72. DarkOwl reiterated that "Atlas misrepresented that the tens of thousands of emails it sent were from 'covered persons' or otherwise constituted valid requests under Daniel's Law." *Id.* ¶ 74. DarkOwl further alleged that "Atlas knew its representations were false and/or otherwise unverified . . . by failing to confirm the covered person status and by failing to confirm the request contained Protected Information." *Id.* ¶ 75. DarkOwl's actual allegations

reliance are the hallmarks of any fraud claim." *Banco Popular v. Gandi,* 184 N.J. 161, 174 (2005). And New Jersey law is clear that "fraud is never presumed, but must be established by clear and convincing evidence." *Weil v. Express Container Corp.*, 360 N.J. Super. 599, 612-13 (App. Div. 2003); *In re Myford Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2016 WL 7734558, at *23 (N.D. Cal. Sept. 14, 2016) ("New Jersey presumes neither reliance or causation").

The "presumption or inference" in *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 332 N.J. Super. 31, 50 (App. Div. 2000), relied on by DarkOwl, applies only under certain factual circumstances to determine whether common issues predominate for purposes of certifying a class. *Id.* DarkOwl deceptively quotes *Varacallo* to hide this important context. *See* Opp. at 30 (using empty brackets in quote). The full quote is as follows, with omitted portions bolded: "The presumption or inference of reliance and causation, where omissions of material fact are common **to the class**, has been extended in the context of both common law and statutory fraud." 332 N.J. Super. at 50. The reason for allowing an inference of presumption in class certification is due to the difficulty of establishing individual reliance for each class member. *Id.* at 49 ("For purposes of certifying a class, must the plaintiffs offer direct proof that the entire class relied on

---

leave no room for doubt – its claim is based on affirmative misrepresentations, not omissions as it now claims. And even if it pled an omission in the nondisclosure requests, any such claim would fail because Daniel's Law specifies precisely what information must be included in the notice, and DarkOwl cannot backdoor additional requirements through a common law fraud claim.

defendant's representation that omitted material facts, where the plaintiffs have established that the defendant withheld these material facts for the purpose of inducing the very action the plaintiffs pursued? We think not."). DarkOwl does not and cannot cite any case applying such an inference outside the unique class certification context. Because this is not a class action, DarkOwl was required to plausibly allege actual reliance on the representation that assignors were Covered Persons, and as argued in the Motion and not rebutted, it failed to do so. Mot. at 34.

Finally, DarkOwl does not respond to Plaintiffs' argument that DarkOwl does not allege any damages from the purportedly false representation that assignors were Covered Persons. Mot. at 34-35; *See* Opp. at 33-35 (no discussion of damages). DarkOwl is therefore foreclosed from arguing that it did allege such damages. *Dreibelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008) (finding that district court "exercised sound discretion" in refusing to consider arguments that defendant failed to make in response to a motion to dismiss).[43]

### C. Counterclaim Plaintiffs Do Not Adequately Plead Fraud Based on Access to DarkOwl's Platform.

DarkOwl simply ignores Atlas's arguments about the lack of plausibility of DarkOwl's fraud theory based on its contention that Atlas must have accessed its

---

[43]    There is a generic, conclusory "damages" section in DarkOwl's brief, but DarkOwl does not attribute any damages specifically to the misrepresentation about covered persons. *See* Opp. at 36. PCM and US Data have a similar conclusory paragraph about damages. PCM Opp. at 37; US Data Opp. at 37.

platform illegitimately (the screenshot theory) in favor of regurgitating its conclusory contention that Atlas could not have gained access to DarkOwl's platform unless Atlas or someone on its behalf misrepresented itself to DarkOwl or to a DarkOwl customer. *See* Opp. at 34-25; Counterclaims, ¶ 67. For the reasons discussed above in Section I.A.1, DarkOwl does not plausibly allege fraudulent access to its system.[44] DarkOwl does not respond to Plaintiffs' argument that it did not plead justifiable reliance with particularity because it alleged that either DarkOwl *or* DarkOwl's customers relied on "Atlas's misrepresentations" and DarkOwl does not have standing to bring a fraud claim on behalf of its customers. Mot. at 35.

Nor does DarkOwl respond to Plaintiffs' arguments that DarkOwl's damages allegations relating to this fraud claim are entirely conclusory. Compare Mot. 36 with Opp. at 35-36. While DarkOwl has a section of its fraud argument entitled "Damages", *see* Opp. at 36, that section is also conclusory and does not specify which damages go with which theory of fraud.

---

[44]    DarkOwl cites no authority for its illogical argument that it should be permitted to amend after limited discovery, and there is none. Opp. at 36 n. 13. Information to support its claims is within DarkOwl's knowledge. It alleges that Atlas *may* have hacked it. Surely, as an online technology and cybersecurity company, DarkOwl would know whether it had been "hacked." In any event, Atlas has described how it obtained the screenshot, and filed declarations regarding how it learned about various defendants' unlawful disclosures in other cases. But because Atlas acted entirely appropriately and that would not support DarkOwl's trumped-up retributive claims, DarkOwl ignored reality in favor of these conclusory, unsupported, and implausible allegations.

## V.    Counterclaim Plaintiffs Fail to Allege Atlas Conspired With Anyone

DarkOwl concedes that "[c]ivil conspiracy is not an independent tort." Opp. at 38;

Mot at 37.[45] Thus, there is no dispute that the civil conspiracy claim cannot survive if

the motion to dismiss is granted as to the other claims.

DarkOwl argues that the Court should infer a conspiracy from "coordinated timing

and near instantaneous transmission over the New Year's holiday, the inflated volume

of emails in the DDoS attack, and nonpublic access artifacts." Opp. at 38.[46] DarkOwl

does not and cannot explain why it is reasonable to infer that Altas worked with anyone

to transmit emails from the volume and timing alone.[47] And there are no facts alleged in

DarkOwl's counterclaims that suggest that Atlas was working with anyone else

regarding the timing or volume of the nondisclosure requests.[48] To the contrary, the

---

[45] The other Counterclaim Plaintiffs use the same language in their oppositions. Alesco Opp. at 30; PCM Opp. at 38; US Data Opp. at 38; see also Searchbug Opp. at 37 (similarly stating "civil conspiracy is a dependent claim requiring an underlying substantive tort").

[46] The other Counterclaim Plaintiffs similarly conclude that Atlas "could not have launched its attack and accessed" their "systems and data alone." Alesco Opp. at 30–31; PCM Opp. at 39; US Data Opp. at 38; see also Searchbug Opp. at 19 (using slightly different language to say the same thing). And like DarkOwl, they all fail to support their arguments with even one cite to their counterclaims. Alesco Opp. at 29–31; PCM Opp. at 37–39; Searchbug Opp. at 17–19; US Data Opp. at 38–39.

[47]    It is equally as plausible to infer that a sophisticated actor worked alone using software.

[48]    While the Court must accept the well-pleaded allegations of the complaint as true for purposes of this motion, in reality, Atlas did not send the nondisclosure requests. Atlas delivered requests sent by its users, the individual Covered Persons.

counterclaims lay the blame for these actions at Atlas's feet alone. Counterclaims ¶¶ 13; 26.[49]

There are also no factual allegations in DarkOwl's complaint that suggest Atlas worked with anyone to gain access to its data through hacking or a fraudulent login. Nor is there any basis to infer that a sophisticated company like Atlas would need to work with someone to hack a computer system. DarkOwl's *conclusory arguments* that Atlas must have worked with someone cannot save the *conclusory allegations* in its counterclaims. And tellingly, DarkOwl does not try to distinguish the cases Atlas cited that dismissed civil conspiracy claims that were based on similarly conclusory allegations. Compare Mot. at 38 (citing cases), with Opp. at 37–39 (not addressing them).[50]

Finally, DarkOwl does not even attempt to meet the heightened pleading standard that applies to a civil conspiracy fraud claim. Instead, it claims that the Rule 8 standard applies to its claim. Opp. at 37.[51] This ignores clear law that pursuant to "Rule 9(b), a

---

[49] Similar allegations are present in the other cases. Alesco Counterclaims ¶¶ 14, 35; PCM Counterclaims ¶¶ 19, 32; Searchbug Counterclaims ¶¶ 17, 50; US Data Counterclaims ¶¶ 17, 47.

[50] The same is true for the other Counterclaim Plaintiffs. Alesco Opp. at 29–31;  PCM Opp. at 27–39; Searchbug Opp. at 17–19; US Data Opp. at 38–39.

[51] Same for the other Counterclaim Plaintiffs. Alesco Opp. at 29 n. 9; PCM Opp. at 38 n. 11; Searchbug Opp. at 17 n. 4; US Data Opp. at 37 n. 12.

plaintiff must plead with specificity claims for civil conspiracy to defraud." *CrossCountry Mortg., Inc. v. Am. Neighborhood Mortg. Acceptance Co., LLC*, No. CV221119SDWLDW, 2023 WL 2158930, at *7 (D.N.J. Feb. 22, 2023) (citing *John Wiley & Sons, Inc. v. Rivadeneyra*, 179 F. Supp. 3d 407, 411 (D.N.J. 2016)).[52]

## VI.  The Counterclaim Plaintiffs' allegations ignore the Individual Plaintiffs, so the claims against them must be dismissed.

DarkOwl's response to Atlas's argument that the Individual Plaintiffs must be dismissed because there are no factual allegations directed to them is unintelligible. DarkOwl argues that it filed counterclaims against Individual Plaintiffs "to the extent others rely on or benefit from unlawful conduct undertaken by Atlas, the counterclaims are meant to avoid that outcome." Opp. at 8 n. 4. Regardless, DarkOwl identifies no factual allegations of wrongdoing on the part of the Individual Plaintiffs, nor do they cite any case law that suggests that someone that relies on or benefits from someone else's wrongful conduct can be held liable. As such, the claims against the Individual Plaintiffs must be dismissed.

---

[52] Atlas's Motion argues that the "[t]he counterclaims asserted against Atlas must also be dismissed because" they are brought against Atlas in its individual capacity, not in its capacity as an assignee under Daniel's Law. Mot. at 39 n. 47.  DarkOwl is the only Counterclaim Plaintiff to note this argument. But its response is irrelevant. DarkOwl simply argues that "Rule 13 allows counterclaims arising out of the same occurrence." Opp. at 39 n. 14. Atlas's point has nothing to do with Rule 13—it is that DarkOwl failed to bring claims against Atlas as an assignee, which is its only status in this case.

## <u>CONCLUSION</u>

For the reasons stated in the Motion and in this brief, the Court should dismiss the counterclaims in these actions with prejudice.

Respectfully submitted,

By: */s/ Rajiv D. Parikh*

**PEM Law , LLP**
Rajiv D. Parikh
Kathleen Barnett Einhorn
Jessica A. Merejo
1 Boland Dr., Suite 101
West Orange, New Jersey 07052
Telephone: (973) 577-5700
Email: rparikh@pemlawfirm.com
        keinhorn@pemlawfirm.com
        jmerejo@pemlawfirm.com

**BIRD MARELLA RHOW LINCENBERG
DROOKS & NESSIM LLP**
Ekwan E. Rhow (*pro hac vice* pending)
Elliot C. Harvey Schatmeier (*pro hac vice* pending)
Shoshana E. Bannett (admitted *pro hac vice*)
Gregory T. Nolan (admitted *pro hac vice*)
Bill L. Clawges (admitted *pro hac vice*)
1875 Century Park East, 23rd Fl
Los Angeles, California 90067
Telephone: (310) 201-2100
Email: erhow@birdmarella.com
        ehs@birdmarella.com
        sbannett@birdmarella.com
        gnolan@birdmarella.com
        bclawges@birdmarella.com